IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Diane Gilbert Sypolt)
UNITED STATES OF AMERICA, )
)
Defendant. )

**SUPPLEMENTAL JOINT PRELIMINARY STATUS REPORT**

Pursuant to Rule 16 and Appendix A, Rules of the United States Court of Federal Claims and this Court's September 16, 2004 Order, the parties submit the following Supplemental Joint Preliminary Status Report in response to questions set forth in paragraph III(4) of Appendix A and this Court's May 12, 2004 Chambers Procedures Order.

a. Jurisdiction:

The parties currently perceive no jurisdictional defects in this case.

b. Consolidation:

The parties do not believe that this case should be consolidated with any other case.

c. Bifurcation:

The parties do not believe that the trial of liability and quantum should be bifurcated.

d. Deferral:

The parties know of no reason to defer proceedings in this case pending consideration of any other case presently before the Court.

e. Remand/Suspension:

See response to item c, above.

f. Joinder:

The parties do not believe any other party will be joined.

g. Dispositive Motions:

The parties do not anticipate filing dispositive motions prior to the completion of discovery but may reassess the filing of dispositive motions during the discovery period.

h. Relevant Issues:

1. Whether the Government's structural steel design drawings were defective and whether such defective design delayed the detailing, fabrication and erection of structural steel.

a. Steel Service originally planned to fabricate steel for Project from June 1996 to November 1996. Steel Service could not fabricate steel for the Project until it received shop drawings approved by the VA. Steel Service originally planned to prepare shop drawings (referred to as "detailing") from May 1996 to October 1996. Steel Service could not prepare shop drawings during the planned period because the plans and specifications were inadequate

to detail. Specifically, although Steel Service and other bidders had sufficient information to determine steel quantities from the plans to bid and contract, once detailing began Steel Service realized that there was not sufficient information or that there was conflicting information that prevented Steel Service from preparing the shop drawings without more information from the VA. Excerpts from Steel Service's RFI's and the VA's responses are attached at Tab No. 1 as examples.

b. Design information which was either missing from the plans and specifications or which conflicted with other information, could not be provided by Caddell and/or its other subcontractors. Therefore, the VA's the plans and specifications, which had missing or conflicting design information, were defective and the VA cannot escape liability under the guise of the contractor's duty to coordinate the work of its subcontractors.

c. "M" Line North was the first area of the Project to be fabricated by Steel Service and is an area which has been analyzed in detail by Steel Service. Forty-three (43) RFI's affected this area. A list of "RFI's Which Affected "M" Line" is attached at Tab No. 2. Steel Service's analysis of the "M" Line North and the VA's responses establishes that virtually no portion of this area remained unaffected and that the nature and extent of the missing and/or conflicting information coupled with the VA's

delay in responding to Steel Service's RFI's (see Tab No. 2) delayed detailing and fabrication of "M" Line North steel.

d. Steel Service has also analyzed the history of the VA's review process for other drawings to demonstrate the impact of such "review" on Steel Service's ability to fabricate. See Tab No. 3 (RFI review); Tab No. 4 (shop drawings review).

2. Whether the Government unreasonably delayed in responding to Steel Service's RFI's and in reviewing and approving Steel Service's shop drawings and whether such delays caused Steel Service to miss its fabrication windows, thereby rendering its performance more expensive.

a. Based upon the enclosed lists of RFI submittal and VA response dates which demonstrate that the VA held responses to some RFI's for more than 200 days (Tab No. 3) and that the VA timely returned only 59 shop drawings out of more than 900 shop drawings submitted (Tab No. 4), the VA unreasonably delayed the detailing and fabrication process (Tab No. 5).

b. In an excessive number of cases, the VA's response to an RFI was meaningless. For instance, when specifically asked which dimension controlled, the one given on the architectural drawing or the one given on the structural steel drawing, the VA responded that Steel Service was to "coordinate" this dimension with Caddell and/or other subcontractors. However, where, as here,

the design information could only be obtained from the VA or with the VA's assistance, the contractor cannot "coordinate" and the VA is liable.

c. The VA's "clarification" label for its responses to certain Steel Service's RFI's that supplied missing information not otherwise available or which corrected misleading information in the plans and specifications is a constructive change, entitling Steel Service to compensation regardless of the VA's "clarification" label.

d. The enclosed list of shop drawing submittal and back-from-approval dates demonstrates that the VA's review of shop drawings took a minimum of 17 days and a maximum of 220 days (Tab No. 4). That unreasonable delay in approval drastically impacted Steel Service's ability to fabricate. See Tab No. 5 and 6 (as-planned versus as-fabricated schedule).

3. Whether the VA breached its implied warranty of the adequacy of its plans and specifications.

a. See subparts h.1. and 2. above.

4. Whether the VA breached its implied duty not to delay, disrupt or hinder Steel Service's performance.

a. In addition to the discussion above at subparts h.1. and 2., the VA's extra-contractual requirement that shop drawings

be submitted by sequence was unreasonable and further delayed the detailing and fabrication of steel.

b. The VA's shop drawing "review" failed, in many cases, to answer many of Steel Service's questions, so that "holds" noted on the shop drawings when submitted remained "holds" after the VA's review and approval.

c. Or, the VA's review created more confusion by the VA's circling of dimensions for Steel Service to confirm via the VA's instructions to "coordinate" design information already shown on the drawings.

5. Whether the VA's alleged failure to issue complete and adequate structural steel design drawings, its alleged failure to promptly provide responses to cure the defects in its drawings and its alleged failure to review and approve shop drawings within a reasonable time constitute constructive changes and/or an unreasonable suspension of the work, entitling Steel Service to compensation.

6. Whether Steel Service is entitled to recover the approximate amount of $3,447,100.37, together with interest and costs, as itemized at Tab No. 7.

7. The Government's response to these allegations is that the purpose of the detailing and shop drawing submittal process is to engage in exactly the type of detailed review and clarification

of the design drawings that occurred. Neither Caddell nor Steel Service could have expected to be able to prepare precise shop drawings without obtaining additional information and/or resolving omissions and discrepancies, and Steel Service has not shown that the substance of the legitimate clarifications that it obtained was particularly unusual, and certainly not that the required clarifications, in and of themselves, rendered the design drawings "defective." Steel Service's complaint that certain Government responses were "meaningless" or otherwise insufficient requires a case-by-case analysis which Steel Service's claim did not provide. More importantly, as Steel Service admits, its examination of the design drawings during the bid phase, which was, by definition, detailed enough for Steel Service to quantify its bid, did not reveal any "defects," therefore, absent clear evidence to the contrary, the drawings cannot be deemed to be "defective."

As a practical matter, Steel Service was a subcontractor to Caddell and had the obligation to submit RFIs and requests for drawing clarifications to Caddell. Steel Service's claim failed to isolate Government "delays" in review/return of shop drawings and RFIs from those caused by Caddell, or even to segregate those RFI's that were answered directly by Caddell without any Government input whatsoever. A number of Steel Service's RFI's contained questions that were answerable by reference to the drawings without any need

for clarification or resolution of a conflict. Further, Steel Service/Caddell's practice of submitting a large number of RFIs at one time may well have contributed to any slowness in the Government's response time. Nevertheless, Steel Services' allegation that the Government took between 17 and 220 days to review/return shop drawings is simply untrue. The contract provided that the VA had 30 days to review and return submittals. The Government's records indicate that virtually all of Steel Services' submittals were reviewed and returned within this time frame.

Finally, Steel Services' complaints relate only to the administrative process of detailing, submittal and review of shop drawings, and the posing and resolution of RFIs. Delays in these administrative tasks, even if they occur and are the responsibility of the Government, do not necessarily translate into actual delays in construction operations, or a critical path delay to the project. Steel Service's claim appears to suggest that the administrative delays resulted in actual field/project delay, but did not support this notion with a cause/effect or CPM analysis in its claim. In actuality, the Government's response time to shop drawing submittals and RFIs was not out of the ordinary, unreasonable, or in violation of any contract provision. Moreover, Steel Services' approved construction schedule showed steel would

be delivered to the site around July 17, 1997, which in fact took place. This is contrary to Steel Service's claim that the Government delayed a "scheduled" delivery of steel from April, 1996, to one year later."

i. Settlement:

The parties will conduct settlement negotiations, and will discuss the possibility of submitting this case for alternative dispute resolution as discovery proceeds. If the parties agree to pursue alternative dispute resolution, we will notify the Court promptly.

j. Trial:

Both parties anticipate proceeding toward trial should discovery reveal that dispositive motions, ADR, or settlement are inappropriate. The parties recommend that trial should be held in Jackson, Mississippi.

k. Electronic Case Management:

The parties are aware of the Court's electronic case management procedures and will comply with them. In addition, the parties will cooperate with regard to the use of electronic document management techniques where possible.

l. Other Information:

There is no other information of which the Court should be made aware at this time.

Discovery:

The parties request a discovery period of eight months, commencing with the approval of this joint preliminary status report. The parties propose that expert reports be due 70 days before the end of the discovery period, with expert depositions to take place thereafter. The parties also propose that they file a joint status report proposing further proceedings within 30 days after the close of discovery.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

s/David W. Mockbee

MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, 10th Floor
317 East Capitol Street
Jackson, Mississippi 39201
601/353-0035 Telephone
601/353-0045 Facsimile

Attorney for Plaintiff

September 29, 2004