IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-461C |
| | ) | (Judge Futey) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO COMPEL

Pursuant to RUSCFC 37(a), defendant, the United States, respectfully requests the Court to compel the plaintiff ("Caddell") to produce the information described in the informal discovery request that is attached to this motion as exhibit A. Pursuant to RUSCFC Appendix A (V)(10), we certify that we have conferred in good faith to attempt to resolve this dispute prior to filing this motion.

STATEMENT OF FACTS

Caddell initiated this case in March 2004, slightly more than two years ago. A. 12.[1] A Joint Preliminary Status Report was filed on September 29, 2004, that requested a discovery period of eight months subsequent to the Court's approval of the

[1] Citations to the appendix to this motion are "A. #." Although most of the documents relied upon herein are a matter of record, having been previously filed with the Court, for convenience we are including excerpts from those documents in our appendix.

discovery plan. A. 14-15. The case was transferred to the current judge, who ordered an updated status report to be filed on December 29, 2004. A. 16. The joint status report of December 29, 2004, noted that defendant was preparing to produce documents to Caddell in January 2005, and requested a discovery period through June 2005. A. 17-18. After a status conference with the parties, the Court ordered that discovery should continue through July 2005. A. 19.

On August 15, 2005, pursuant to the Court's order for a status report, the parties reported three things. A. 20. First, that Caddell had concluded its review of defendant's documents.[2] Id. Second, the status report indicated that Caddell had retained experts (i.e. after the close of the initial discovery period) and recently disclosed their identities to the defendant, seeking to file expert reports on October 31, 2005. Id. Third, that following the disclosure of Caddell's expert reports (i.e. after October 31, 2005),

> Defendant will determine those fact and/or expert witness depositions it wishes to take

---

[2] Caddell's document review consisted of receiving a large volume of electronic documents from the defendant and Caddell conducting a review of the Government's "design documents" in Washington, D.C. Caddell chose not to take any depositions during fact discovery. A. 61.

> and will conclude those depositions in November 2005. At that time, defendant will also make a decision regarding the need to retain its own experts.

A. 20.

The parties also proposed "to engage in further discovery (fact and expert) until December 1, 2005, at which time the parties will advise the Court of the status of the case, including any additional discovery and the scheduling of a trial date." Id. The Court approved this plan. A. 21.

Caddell's inability to meet the October 31, 2005, deadline nullified the approved schedule and caused Caddell to seek additional time for its expert witnesses to work.[3] A. 22-23. Without objection from the defendant, on October 18, 2005, Caddell sought to have the schedule moved back two and a half months to conclude with a status report to the Court on February 15, 2005. Id. Again, Caddell agreed that, following Caddell's disclosure of experts reports (i.e. after December 2, 2005), "defendant may retain its own experts." A. 23.

---

[3] Caddell expressly indicated that the delay was caused in part "because of Caddell's expert's schedule" and that "[d]efendant has assisted Caddell in obtaining documents needed by Caddell's expert to complete his report."

Caddell's experts produced reports, notifications of which were filed with the Court on December 2, 2005. A. 24-25. Defendant's counsel scheduled, then took, the depositions of Caddell's fact and expert witnesses in late January 2006, after conducting a brief one-day document inspection at Caddell's counsel's office to assist in preparing for the depositions. A. 61. Defendant then notified Caddell that it was retaining experts and on February 14, 2006, the parties jointly notified the Court and proposed a schedule to permit the defendant's experts to perform their work – which was approved by the Court on February 21, 2006. A. 26-28.

After a review of the documents in defendant's counsel's possession, and a preliminary assessment of Caddell's claims and experts reports, on March 23 and 24, 2006, defendant's experts conducted an inspection of approximately 20 boxes of documents stored in Jackson, Mississippi, at Caddell's counsel's office. A. 62. During that document review, defendant's counsel met with Caddell's counsel and agreed to propose a modified schedule that was eventually based upon three factors: First, defendant's experts did not find the documents in Jackson to be complete or sufficient for a detailed review of Caddell's claim, particularly

the damages elements.[4] Second, defendant's experts' schedules were such that quick completion of their work was impossible, even if complete information had been produced in Jackson. Third, counsel for the parties obtained an indication from the Court's office that the Court was not available for trial until 2007. A. 62. Based upon those three factors, the parties filed a status report on April 28, 2006, that proposed a new schedule to permit defendant's experts to perform their work, and for other pretrial activities to take place, leading up to a trial in early 2007.[5] A. 31-32. In the April 2006 status report,

---

[4] Caddell's initial disclosure said:

> Copies of all documents, data compilations and tangible things in the plaintiff's possession, custody or control that are relevant to the disputed facts alleged with particularity in the pleadings are located at plaintiff's counsel's office and will be produced to defendant at its convenience and are too voluminous to copy and produce.

Although this statement is not necessarily inaccurate if limited to "the disputed facts alleged with particularity in the pleadings", the documents in Caddell's counsel's office are not sufficient to audit Caddell's damages claims, or to fully evaluate the delay elements of Caddell's claim, which are not "alleged with particularity in the pleadings."

[5] The parties understand that the modification to the existing pretrial schedule was more properly filed as a joint motion to modify the scheduling order rather than as a joint (continued...)

Caddell, for the first time, indicated to the Court a desire to submit "rebuttal reports" in response to defendant's expert's reports. Id., A. 30.

Shortly after defendant's experts obtained copies of the documents that were reviewed in Jackson, defendant propounded an informal discovery request for additional information.[6] A. 1-11, 33, 34. The information sought can generally be described as garden-variety claim-audit materials for Caddell's claimed damages[7] and typical scheduling materials relevant to the delay and loss of productivity components of Caddell's claim. Id. Defendant indicated flexibility in the manner in which this information was produced – either as a package of documents

[5](...continued) status report and apologize for any inconvenience this may have caused the Court.

[6] Although the request was in a slightly different format, the information requested was the same as the information contained in the appendix to this motion at pages 1-11. In response to Caddell's general refusal to provide the requested information, explanations of the relevance of the requested information were added. Id.

[7] Caddell's claim seeks damages on behalf of five different companies; Caddell, Steel Services, EEE Detailing, American Metal Works, and Williams Beasley. With the exception of Steel Services and American Metal works, which are related companies, there are no fewer than four separate sets of financial records related to the damages sought in this case. A. 13.

provided by Caddell to the defendant, or as a series of one-day visits to each company by defendant's experts to examine the information as it is kept in the ordinary course of business. A. 33, 34, 36, 38, 40, 43.

Without posing a specific objection to any of the requests, Caddell first refused to provide any of the information requested or to permit an inspection of the claimant-companies' records, demanding without meaningful explanation that our request for information be "much narrower." A. 35. Caddell then made several vague and evolving arguments, discussed below, to the effect that the document request was somehow improper or untimely. A. 35, 37, 39, 42. After a series of email communications between counsel (A. 33, 34, 36, 38, 40, 43), on May 15, 2006, Caddell indicated that it had "inquired" about further documents (apparently not having done so previously), and offered to produce a limited number of additional documents, again in Jackson, Mississippi (demonstrating that the documents previously produced were, indeed, incomplete). A. 44-47. At the same time, however, Caddell has only "referred" our request to a lawyer for a second-tier subcontractor[8] (A. 46) and continued to

---

[8] Obviously, if Caddell' seeks to recover damages on behalf (continued...)

refuse to produce other relevant and discoverable information, asserting primarily (and incorrectly) that the defendant is required to obtain these documents from the VA or the Defense Contract Audit Agency ("DCAA"). A. 46-47. Given the need to establish a complete schedule for pretrial proceedings, and with a fixed trial date of February/March 2007, we believe that continued attempts to persuade Caddell to make the required full-disclosure of information is not likely to be satisfactory, and would involve the expense of yet another trip to Jackson to inspect a still-incomplete set of documents, so we are filing this motion instead.

## ARGUMENT

### I. The Information We Seek Is Plainly Discoverable

In the early stages of the case, Caddell was obligated by Rule 26(A)(1)(c) to provide

> a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under RCFC 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is

[8] (...continued) of a subcontractor, it is obligated to produce information related to that subcontractor's claim in discovery, not merely to "refer" us to the subcontractor's counsel. Rule 26(A)(1)(c).

> <u>based, including materials bearing on the nature and extent of injuries suffered.</u>

(Emphasis supplied). Caddell's initial disclosure promised:

> A computation of damages claimed by plaintiff is attached hereto as Exhibit "A" and made a part hereof. Plaintiff agrees to make available to defendant at defendant's convenience for inspection and copying all documents or other evidentiary material not privileged or otherwise protected on which such computation is based.

A. 10. Caddell's "exhibit A" (A. 13) is a simple summary of the categories of claims presented, and includes, among others, three separate overhead items, three discrete subcontractor claims (that are unexplained), two "efficiency losses," a "preparation cost" that is an "estimate" and the entire summary "excludes Caddell's mark-up" which Caddell, apparently, wishes to keep as a secret. A. 13.

Clearly Caddell was obligated, even without the list of information provided by the defendant (A. 1-11), to make all documents relevant to its damages claims available for inspection. The information sought by our experts is exactly the type of information discussed in Rule 26(A)(1)(c) and, despite our repeated admonition to Caddell that this information is discoverable (A. 33, 34, 36, 38, 40, 43), Caddell has failed to comply with its obligation. Of course, in addition to Caddell's

obligation under Rule 26(A)(1)(c), the defendant is entitled to the information it seeks under Rule 34.

Based upon the foregoing, Caddell's refusal to provide complete disclosure is unfounded and Caddell should be compelled to provide full disclosure to the defendant. Because we have been forced to file a motion to compel, pursuant to Rule 37(a)(4)(A), we also seek the costs associated with the preparation of this motion (cost data will be submitted upon the Court's order to that effect), and a suspension of the pretrial schedule unless and until the defendant notifies the Court that Caddell has fully complied with the Court's order to compel.

II. Caddell's "Objections" Are Ill-Founded

With limited exceptions regarding Caddell's enigmatic "markup" claim,[9] and the information that Caddell finally did agree to produce (A. 45-47), Caddell has consistently refused to produce the requested information without even asserting that the requested information is not discoverable. Id.

Instead of asserting any legitimate objection to disclosure, Caddell has only offered excuses that suggest that Caddell's

[9] Caddell's initial disclosure does not depict a markup amount (A. 13), yet Caddell's counsel has suggested that a claim for Caddell's "markup" exists without specifying what it is. A. 39, 46.

discovery obligations are eliminated by the timing of the defendant's requests, or otherwise by the defendant's "lack of diligence." Id. Although these objections are facially illegitimate (no matter the timing of the defendant's requests, and certainly with almost a year to go before trial, the defendant is clearly entitled to the information pursuant to Rule 26(A)(1)(c)). Because Caddell has not complied with Rule 26(A)(1)(c), our motion to compel should be granted. At the risk of overindulgence, however, we offer the following discussion of Caddell's excuses.

A. Our Requests Are Not Untimely

Despite ample time (approximately one year) between our requests of May 2006 (A. 1-11) and the scheduled trial date of February/March 2007, Caddell has asserted that our request for the information required to be disclosed pursuant to Rule 26(A)(1)(c) is untimely. A. 42. The best Caddell can do to "support" this argument appears to be the following:

> Defendant's experts did not, to Caddell's knowledge, even start their work on this project until March 23, 2006 - - less than one month before their expert reports were due and almost two months after the discovery deadline.

A. 48. Caddell's statement is based upon the March 2006 date that our experts actually inspected the incomplete information provided in Jackson, Mississippi, and is, therefore, meaningless. Our status reports clearly depict the process and timing of receipt of Caddell's tardy expert reports (December 2005), our retention of our own experts (February 2006). A. 20, 23, 26. After being retained in February 2006, our experts' document inspection in late March 2006 and subsequent request for additional information in early May 2006 is hardly untimely.[10] Caddell's assertion that the document inspection occurred "two months after the discovery deadline" is similarly unfounded inasmuch as the parties agreed in the February 2006 status report only that "[f]act discovery has been completed" (A. 26) and, obviously, Caddell understood that our experts' work involved gathering information, including the inspection of documents in Jackson in March 2006. Why Caddell appeared to recognize that our experts were entitled to examine documents in Jackson - but nowhere else - has not been explained. In addition, the passage of the "discovery deadline" upon which Caddell now relies did not

---

[10] Our experts examined and analyzed the project documents already in defendant's counsels possession (which had been produced to Caddell) prior to the March 2006 inspection in Jackson. A. 62.

prevent Caddell from agreeing in the April 2006 status report that the defendant's experts would continue their work until July 14, 2006. A. 31-32.

Caddell has also cast the defendant in the role of delaying the case on the whole. A. 44-45. As the record clearly reflects, however, it was Caddell who did not even identify experts until after the end of the initial discovery period (A. 20), and it was Caddell who obtained additional time (twice) for its experts to conclude their work. A. 20, 22. It is disingenuous, at least, for Caddell to blame the defendant for delaying this case and to refuse to disclose discoverable information, all after "[d]efendant has assisted Caddell in obtaining documents needed by Caddell's expert to complete his report. . . ." A. 23.

B. The Defendant Is Entitled To Discovery In Litigation Regardless Of Whether Information Was Available Previously

Caddell has also refused to produce the requested information because, according to Caddell, we must obtain that information from the VA or DCAA. A. 45-47. Caddell has suggested that it would somehow be burdensome to produce information that DCAA previously examined "3 times." A. 42.

This is a bogus argument for at least three reasons: First, Caddell's damages have been modified or revised no fewer than six times, four of which occurred after the DCAA audited Caddell's claim.[11] Second, DCAA's audit did not include examining the records of American Metal Works and Williams-Beasley and was, therefore, incomplete. A. 51. Third, and most important, the fact that DCAA conducted an audit as part of the defendant's review of the claim at the administrative level in no way relieves Caddell of its discovery obligations before this Court. Rule 26(A)(1)(c) does not make an exception for damages claims previously audited by DCAA (even if the claim had not been revised multiple times after the DCAA audit as has occurred

[11] Caddell's REA of October 1997 sought damages of $2,907,121. A. 52-53. Caddell's revised REA of August 1998 damages of $3,497,100.37. A. 54. Caddell's June 1999 response to the DCAA audit made a revision downward in the claim amount of approximately $100,000 - $200,000. A. 55-56. Apparently unaware of its own 1999 claim revision, Caddell's complaint of March 2004 sought damages of $3,497,100.37 (the August 1998 amount). A. 12, 57. Caddell's initial disclosures of July 2004 sought damages of $3,497,100.37 but "excludes Caddell's mark-up." A. 13. At his January 2006 deposition, Caddell's claims consultant, Mr. Vinson, testified that a previously-undocumented revision "slightly lower" to Caddell's damages had been made "only compiled today". A. 57.

here), and plainly requires Caddell to produce the information that we seek.

As a practical matter, although DCAA's work is helpful, and our review of DCAA's work-paper files may prove useful in limiting the number of documents that we actually copy from Caddell, we do not intend to rely solely upon DCAA's prior audit to defend this case. This was, of course, obvious to Caddell when we identified an independent damages expert in February 2006. In short, Caddell's argument that we are required to obtain information from VA or DCAA that Caddell is obligated to produce under Rule 26(A)(1)(c), is simply unfounded.

C. The Information We Seek Is Not Irrelevant

As stated above, Caddell has not even argued that the majority of the information we seek is not discoverable. A. 45-47. The only exception appears to be Caddell's response to our request for Caddell's (the prime contractor's) financial statements, that "Caddell's only claim in this matter is a mark-up on the total claim. Therefore these documents are irrelevant." A. 46. Caddell's contract (general conditions, section 1.34 (A. 59-60)) requires Caddell to submit "cost and pricing data" with its change proposals (i.e. claims), so Caddell's financial statements clearly are "relevant" to a claim

for "mark-up on the total claim" and are discoverable under Rule 26(A)(1)(c).

## CONCLUSION

For the foregoing reasons, we respectfully request the Court to grant our motion and compel Caddell to fully produce the information described in appendix pages 1-11, we also seek the costs associated with the preparation of this motion (cost data will be submitted upon the Court's order to that effect), and that further proceedings in the case made contingent upon our reporting to the Court that Caddell has fully complied with the Court's order.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

May 19, 2006

CERTIFICATE OF FILING

I hereby certify that on May 19, 2006, a copy of foregoing "DEFENDANT'S MOTION TO COMPEL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian S. Smith

# APPENDIX

REQUEST FOR PRODUCTION OF DOCUMENTS

**Documents needed from Caddell**

List of all disbursement transactions from Caddell to EEE Detailing under the contract/subcontract, along with supporting documentation. [To determine the extent, if any, that EEE has been compensated for alleged damages.]

Caddell financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998. [If Caddell is waiving any claim for direct and indirect costs on this claim, these financial statements are not needed.]

Copies of all reports on audits of any Caddell activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present. [If Caddell is waiving any claim for direct and indirect costs on this claim, these financial statements are not needed.]

Copies of supporting documentation for Change Order #2 between Caddell and SSC. [SSC and Caddell were beginning litigation shortly after they executed a contract.

Copies of the most recent shop drawing/submittal log (all logs are NOT necessary because this document should have been continually updated reflecting submittals from the start of the project through project completion). [While the VA/AE probably has their version of the submittal/shop drawing log, the contractor's version often differs from the version the owner/AE used on the project. Differences between the submittal logs maintained by Caddell vs. VA is noted in the project records.]

Copy of Caddell's RFI log reconciling the RFI numbers used by SSC vs. those used by Caddell for the VA. [The contractor always reconciles the RFI numbers used by the subs vs. the general contractor's RFI numbers. The VA would not have known SSC's RFI numbers because the RFIs were submitted by Caddell using their (Caddell) numbering system.]

Copies (preferably electronic) of all CPM schedules for the duration of the project including the baseline schedule and subsequent schedule updates. [The schedules that were provided in .pdf form are partial schedules showing only the structural steel and NOT the complete project. Also, the Jackson files contained fragmented schedules in MS Project format, Primavera format, and the VA CPM Automated Control System format so there should be electronic files – maybe at Caddell. The schedules are needed to perform the schedule delay analysis.]

REQUEST FOR PRODUCTION OF DOCUMENTS

**Documents needed from SSC**

Copy of the contract/subcontract/purchase order between SSC and EEE Detailing; plus all modifications and related correspondence. [To determine the terms of the contract/subcontract with respect to any provisions for claims, changes, mark-ups, and so forth. To identify any allegations between the parties regarding causes of delays or other disagreements.]

Copy of the contract/subcontract between SSC and Williams-Beasely Erectors; plus all modifications and related correspondence. [To determine the terms of the contract/subcontract with respect to any provisions for claims, changes, mark-ups, and so forth. To identify any allegations between the parties regarding causes of delays or other disagreements.]

List of all disbursement transactions from SSC to EEE Detailing under the contract/subcontract, along with supporting documentation. [To identify amounts paid for contract work and changes and any disputes over payment between the parties.]

Copies of all SSC time distribution reports and payroll data for the period from January 1996 through December 1997. [To assess the amount of productive and nonproductive time for SSC employees, and hours worked on base contract work vs. change order work.]

Copies of all SSC production reports for the period from January 1996 through December 1997. [To assess the amount of productivity during these periods.]

Copies of supporting documentation for the assertions that SSC bid overhead at a rate of 200% for the VA project and started bidding overhead at a rate of 235% for projects in late 1996. [To evaluate and test these assertions.]

Copies of all notes, memoranda, and calculations supporting SSC's bid on the VA project. [To evaluate and test SSC's assertions regarding the bases upon which it planned and anticipated performing the work; to evaluate and test the reasonableness of certain elements of SSC's bid.]

Copies of all supporting documentation for the claimed SSC cost of subletting, including actual subletting costs, actual shipping costs, evidence of sales taxes paid to the State of Tennessee, and support for SSC's estimated costs of producing the subletted items, including estimated hour, estimated labor rate, estimated overhead rate, and estimated fixed cost not recovered. [To evaluate and test these parts of SSC's claim and to evaluate and test the assertions underlying these parts of SSC's claim.]

Copies of all supporting documentation for the SSC tonnage-to-date amounts, man-hours per ton calculations, and other elements of the SSC efficiency loss calculations. [To evaluate and test these parts of SSC's claim and to evaluate and test the assertions underlying these parts of SSC's claim.]

Copies of supporting documentation for SSC's other projects budgeted and actual man-hours and inefficiency man-hours used in the SSC efficiency losses on other projects calculations. [To evaluate and test these parts of SSC's claim and to evaluate and test the assertions underlying these parts of SSC's claim.]

Copies of supporting documentation for SSC's additional direct payments to EEE ($268,007.50). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation for SSC's costs of electronic data ($15,000.00). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation for SSC's other costs ($121,769.25). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation for SSC's claimed preparation costs ($153,884). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

SSC financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles.]

Copies of all reports on audits of any SSC activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles or other bases of accounting.]

Copies of all claims, requests for equitable adjustment, and change order proposals that SSC asserted against any other projects for work performed during 1996 and 1997. [To determine if SSC properly allocated alleged unabsorbed overhead and alleged inefficiencies.]

Copy of the certified claim transmitted to Caddell on February 3, 1998 (the scanned pdf version of the REA is dated October 31, 1997 and has handwritten notes/markings on it,

but it appears from project correspondence that a claim was submitted on 2/3/98). [To ensure that the correct and completion version of the claim is being evaluated.]

Copies of all certified payrolls for SSC and its subcontractors. [To validate the portion of the claim alleging loss of efficiency.]

Copies of SSC's plant production schedules (planned/baseline and updates) for the VA project and all other projects in-shop for the entire delay period claimed by SSC. [To validate the portion of the claim alleging loss of efficiency, and allegations of delay.]

**Documents needed from EEE Detailing**

Copies of all invoices from EEE Detailing to Caddell/SSC under the contract/subcontract. [To determine the extent, if any, that EEE has been compensated for alleged damages.]

Copies of all correspondence related to EEE Detailing invoices under the contract/subcontract. [To identify any allegations between the parties regarding causes of delays or other disagreements.]

Copies of all cost data and time logs maintained by EEE Detailing related to extra handling of RFIs under the contract/subcontract. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of all EEE Detailing time sheets for the period April 1996 through September 1997. [To evaluate and test SSC's assertions related to unproductive time.]

Copies of travel expense vouchers and supporting documentation for the additional engineering travel costs ($25,703). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of time distribution and payroll records supporting the additional engineering project management costs ($89,654.25). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of invoices and canceled checks for additional engineering printing costs ($6,412). [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Supporting documentation for the unpaid principal salaries of $50,000 included in EEE Detailing overhead costs and $100,000 included in the inefficiency damages calculations. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

EEE Detailing financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1994, 1995, 1996, 1997, and 1998. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles.]

Copies of all reports on audits of any EEE Detailing activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the

claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles or other bases of accounting.]

Copies of all claims, requests for equitable adjustment, and change order proposals that EEE Detailing asserted against any other projects for work performed during 1996 and 1997. [To determine if SSC and EEE Detailing properly allocated alleged delays, alleged unabsorbed overhead, and alleged inefficiencies.]

Copies of EEE's RFI, change order, and submittal/shop drawing logs. [To determine the extent of alleged delays in detailing the structural steel.]

**Documents needed from Williams-Beasely Erectors**

Copies of all supporting documentation for the Williams-Beasely Erectors claimed costs of $208,322.73. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Williams-Beasely Erectors financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles.]

Copies of all reports on audits of any Williams-Beasely Erectors activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles or other bases of accounting.]

Copies of all claims, requests for equitable adjustment, and change order proposals that Williams-Beasely Erectors asserted against any other projects for work performed during 1996 and 1997. [To determine if SSC and Williams-Beasely Erectors properly allocated alleged damages.]

**Documents needed from American Metal Works**

Copy of the contract/subcontract between SSC and American Metal Works; plus all modifications and related correspondence. [To determine the terms of the contract/subcontract with respect to any provisions for claims, changes, mark-ups, and so forth. To identify any allegations between the parties regarding causes of delays or other disagreements.]

Copies of supporting documentation for the $83,755 of lost overhead being claimed by American Metal Works. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation (time and attendance records; payroll records; calculations) for the 2,000 hours of unabsorbed overhead being claimed by American Metal Works. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation for the assertion that American Metal Works wage rates increased by $1.00 per hours in 1997. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

Copies of supporting documentation for the assertions that American Metal Works overhead rates were 200% in 1996 and 230% in 1997. [To evaluate and test this part of SSC's claim and to evaluate and test the assertions underlying this part of SSC's claim.]

American Metal Works financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles.]

Copies of all reports on audits of any American Metal Works activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present. [To evaluate the support for claimed indirect costs and the claimed indirect cost rate; to evaluate the claimed unabsorbed overhead; to identify any accounting system and internal control weaknesses; to evaluate contingency disclosures; and to evaluate job cost and profitability information prepared under generally accepted accounting principles or other bases of accounting.]

Copies of all claims, requests for equitable adjustment, and change order proposals that American Metal Works asserted against any other projects for work performed during

1996 and 1997. [To determine if SSC and American Metal Works properly allocated alleged unabsorbed overhead.]

**Documents needed from Construction Mediation Services**

Copies of all workpapers prepared by and other information relied upon by Construction Mediation Services in preparing the REA. [To evaluate and test the accuracy and veracity of al elements of SSC's claim; to enable the conclusions and bases for the conclusions to be evaluated and tested.]

**Documents that MAY be found at the VA**

Copies of approved REAs for any project time extensions between the VA and Caddell.

Copies of any REAs submitted by Caddell to the VA for subcontractors other than SSC.

Copies of notices of defective and/or rejected work for SSC and its subcontractors.

Copies of contract non-compliance notices for SSC and its subcontractors.

Copies of monthly CPM schedule narratives from Caddell to the VA.

Copies of any monthly progress reports prepared by Caddell for the VA.

Electronic copies of the schedule of values/progress payments for the duration of the project.

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 1 9 2004
U.S. COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
Plaintiff, )
v. )
UNITED STATES OF AMERICA, )
Defendant. )

No. 04-461C

(Judge ________)

**COMPLAINT**

Plaintiff, Caddell Construction Co., Inc. ("Caddell"), files this Complaint against defendant, United States of America, as follows:

1. The Court has jurisdiction of this Complaint pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §609(a)(1). Caddell sponsors this claim on behalf of its subcontractor, Steel Service Corporation ("Steel Service"), who is the real party in interest.

2. Caddell was the general contractor on Contract No. V101BC0133 with the United States Department of Veterans Affairs ("VA") for Seismic/Modernization, Phase One, VA Medical Center, Project No. 614-011, Memphis, Tennessee for the construction of a new steel framed building of approximately 310,000 square feet and the renovation of the existing VA medical center ("the Contract" or "the Project").

3. Pursuant to the terms of the Contract, Caddell was required to, among other things, detail, fabricate, deliver and

F:\docs\HALLL\PLD\4460035. Caddell Complaint.wpd

## SUMMARY

The additional cost is summarized as follows below:

| | | | |
|---|---|---|---|
| A. | Addl Engineering cost Revised 6-17-98 | | $404,776.75 |
| B. | Delay Cost to the Fabricator (Unabsorbed Overhead) | | $800,199.00 |
| C. | Loss of Overhead Due to the Rescheduled Project Being Further Delayed | | $427,966.00 |
| D. | Subcontractor Claims | | |
| | 1. EEE Detailing Services, Inc. - Revised 6-17-98 | $146,853.75 | |
| | 2. Williams-Beasley Erection | $208,322.73 | |
| | 3. American Metal Works | $141,763.00 | $496,939.48 |
| E. | Other Direct Cost | | |
| | 1. Increase in Overhead Rates from 1996 to 1997 | $122,500.00 | |
| | 2. Increased Cost as a Result of Subletting | $207,527.85 | |
| | 3. Efficiency Losses | | |
| | a. This project | $164,747.83 | |
| | b. Other projects | $279,732.15 | $774,507.83 |
| F. | Preparation Cost (Estimate) | | $153,884.00 |
| | | **Subtotal** | **$3,058,273.06** |
| | Profit | | $305,827.31 |
| | Bond | | $33,000.00 |
| | Disputes Act Interest* | | $100,000.00 |
| | | **Claim Amount** | **$3,497,100.37**** |

* A six-month allowance is provided for Disputes Act Interest. The amount will be adjusted to final time, rates and amounts.

** Claim Amount excludes Caddell's mark-up.

EXHIBIT "A"

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-461C |
| | ) | (Judge Diane Gilbert Sypolt) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL JOINT PRELIMINARY STATUS REPORT**

Pursuant to Rule 16 and Appendix A, Rules of the United States Court of Federal Claims and this Court's September 16, 2004 Order, the parties submit the following Supplemental Joint Preliminary Status Report in response to questions set forth in paragraph III(4) of Appendix A and this Court's May 12, 2004 Chambers Procedures Order.

a. Jurisdiction:

The parties currently perceive no jurisdictional defects in this case.

b. Consolidation:

The parties do not believe that this case should be consolidated with any other case.

c. Bifurcation:

The parties do not believe that the trial of liability and quantum should be bifurcated.

F:\docs\HALLL\PLD\4460035 Supplemental JPSR.wpd

Discovery:

The parties request a discovery period of eight months, commencing with the approval of this joint preliminary status report. The parties propose that expert reports be due 70 days before the end of the discovery period, with expert depositions to take place thereafter. The parties also propose that they file a joint status report proposing further proceedings within 30 days after the close of discovery.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

# In the United States Court of Federal Claims

**No. 04-461C**

**(Filed December 14, 2004)**

* * * * * * * * * * * * * * * * * * * * * * *

**CADDELL CONSTRUCTION CO., INC.** *

**Plaintiff,** *

**v.** *

**THE UNITED STATES,** *

**Defendant.** *

* * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

This case has been re-assigned to the undersigned Judge. The parties are directed to file an updated report by Wednesday, December 29, 2004, concerning further proceedings. The court expects the parties to provide alternative dates for a status conference to be held in January.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-461C |
| | ) | (Judge Bohdan A. Futey) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND SUPPLEMENTAL JOINT PRELIMINARY STATUS REPORT**

Pursuant to this Court's December 14, 2004 Order, the parties hereby further supplement their Supplemental Joint Preliminary Status Report as follows:

1. The parties hereby adopt and incorporate herein by reference their Supplemental Joint Preliminary Status Report and their Corrected Joint Preliminary Status Report previously filed in this action except that defendant requests and plaintiff does not oppose a discovery deadline of June 30, 2005 to accommodate defendant's counsel's lengthy trial in Daewoo Engineering and Construction Co., Ltd. v. United States, Fed. Cl. No. 02-1914, which consumed the months of October and November, 2004 and which will resume in February-March 2005.

2. In the meantime, the parties have scheduled the production of defendant's documents for January 19-20, 2005 at which time the parties also anticipate scheduling the date(s) for plaintiff's

F:\docs\HALLL\PLD\4460035Supp JPSR.wpd

Case 1:04-cv-00046-BAF Document 4 Filed 01/29/2004 Page 3 of 20

production of documents to defendant and tentative dates for depositions.

3. Pursuant to this Court's request, the parties suggest that the conference be held telephonically on January 19, 2005 while the parties are together for the defendant's production of documents.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

s/David W. Mockbee

MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, 10th Floor
317 East Capitol Street
Jackson, Mississippi 39201
601/353-0035 Telephone
601/353-0045 Facsimile

Attorney for Plaintiff

December 29, 2004

# In the United States Court of Federal Claims

**No. 04-461C**

**(Filed February 3, 2005)**

* * * * * * * * * * * * * * * * * * * * * * *
*
**CADDELL CONSTRUCTION CO., INC.** *
*
**Plaintiff,** *
*
**v.** *
*
**THE UNITED STATES,** *
*
**Defendant.** *
*
* * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

Pursuant to the telephonic conference held on February 2, 2005, the following is so ordered:

1. Discovery shall be completed by July 31, 2005.

2. A joint status report indicating further proceedings shall be filed on Monday, August 15, 2005.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**

Case 1:04-cv-00461-BAF Document 42 Filed 08/15/2006 Page 38 of 80

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-461C |
| | ) | (Judge Bohdan A. Futey) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to this Court's February 3, 2005, Order, the parties hereby submit this Joint Status Report:

1. Plaintiff has completed its review of defendant's documents, has retained its expert witnesses and informally disclosed to defendant's counsel their identity and the substance of their anticipated testimony. Plaintiff will file its experts' reports on October 31, 2005.

2. Defendant will determine those fact and/or expert witness depositions it wishes to take and will conclude those depositions in November 2005. At that time, defendant will also make a decision regarding the need to retain its own experts.

3. The parties propose to engage in further discovery (fact and expert) until December 1, 2005, at which time the parties will advise the Court of the status of the case, including any additional discovery and the scheduling of a trial date.

F:\docs\HALLL\PLD\4460035 Joint Status Report.wpd

# In the United States Court of Federal Claims

**No. 04-461C**

**(Filed August 18, 2005)**

* * * * * * * * * * * * * * * * * * * * * * *
*
**CADDELL CONSTRUCTION CO., INC.** *
*
**Plaintiff,** *
*
**v.** *
*
**THE UNITED STATES,** *
*
**Defendant.** *
*
* * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

Pursuant to Joint Status Report filed on August 15, 2005, the following is hereby ordered:

1. Plaintiff shall file its experts' reports by Monday, October 31, 2005.

2. Defendant shall conclude depositions by Wednesday, November 30, 2005, and may retain its own experts.

3. Discovery shall continue until December 1, 2005, and the parties shall file a joint status report by Thursday, December 15, 2005.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Bohdan A. Futey)
UNITED STATES OF AMERICA, )
)
Defendant. )

**PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION OF TIME**

Plaintiff, Caddell Construction Co., Inc. ("Caddell"), files its Unopposed Motion for Extension of Time, seeking an extension of those deadlines set forth in this Court's August 18, 2005 Order. In support, Caddell states the following:

1. This dispute involves the construction of a project for the Veterans Administration in Memphis, Tennessee in 1996-97. Because the project was constructed almost ten (10) years ago, and because pre-construction VA design documents needed to be located and inspected, Caddell had difficulty quickly assembling the documents needed by its expert to compile his report and, as a result, its expert encountered unforeseeable delays in rendering his report by the scheduled deadline of October 31, 2005.

F:\docs\HALLL\PLD\4460035 Pl Unopp Mot Ext Time.wpd

2. In addition, because of Caddell's expert's schedule for November 2005, Caddell's expert will be unable to complete his report until December 2, 2005.

3. Defendant has assisted Caddell in obtaining documents needed by Caddell's expert to complete his report and, as a result, was aware of the possibility that Caddell's expert would be unable to meet the October 31, 2005 deadline and has agreed to the following extensions:

(a) Plaintiff shall file its experts' reports by Friday, December 2, 2005.

(b) Defendant shall conclude depositions by Tuesday, January 31, 2006 and may retain its own experts.

(c) Discovery shall continue until January 31, 2006 and the parties shall file a joint status report by Wednesday, February 15, 2006.

4. Caddell is proceeding diligently to prepare its case for trial. Therefore, Caddell requests that the Court favorably consider this Unopposed Motion and enter an Order, extending the deadlines as agreed by the parties.

WHEREFORE, plaintiff, Caddell Construction Co., Inc., requests that this Court grant its Unopposed Motion for Extension of Time.

Respectfully Submitted,

CADDELL CONSTRUCTION CO., INC.

By Its Attorney

**Memphis Seismic/Modernization Phase I**

**Veterans Administration Hospital**

**Memphis, Tennessee**

Caddell Construction Co., Inc.

v.

United States of America

Expert Report

November 29, 2005

Prepared by:

Marshall T. Ferrell
Tennessee PE No. 8590
Ferrell Engineering, Inc.
2 Office Park Circle
Suite 103
Birmingham, Al 35223
Tel. (205) 879-2036
Fax (205) 879-5642

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

No. 04-461C
(Judge Bohdan A. Futey)

**NOTICE OF FILING OF EXPERT REPORT OF L. RAY VINSON**

In addition to the Expert Report of Marshall T. Ferrell, P.E. filed this day by plaintiff, plaintiff also gives notice that the claim of Steel Ser Cor prepared by L. Ray Vinson constitutes the Expert Report of L. Ray Vinson which has been previously submitted to defendant and is to voluminous to file herein electronically.

If defendant needs copies of Mr. Vinson's Expert Report, then copies will be provided immediately.

Respectfully Submitted,

CADDELL CONSTRUCTION CO., INC.

By Its Attorney

MOCKBEE HALL & DRAKE, P.A.

By: s/David W. Mockbee

David W. Mockbee
MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, 10th Floor
317 E. Capitol Street
Jackson, MS 39201
(601) 353-0035 - Telephone
(601) 353-0045 - Facsimile

Case 1:04-cv-00461-BAF Document 4 Filed 02/14/2006 Page 1 of 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Bohdan A. Futey)
UNITED STATES OF AMERICA, )
)
Defendant. )

**JOINT STATUS REPORT**

Pursuant to this Court's order of October 21, 2005, the parties jointly report as follows. Fact discovery has been completed. The plaintiff's expert reports have been submitted to the defendant. Defendant's counsel has completed depositions of the plaintiff's experts. Defendant is in the process of retaining it own cost and schedule experts.

The parties propose the following schedule for further proceedings:

1. Defendant's experts will conclude their work and issue reports by April 14, 2006.

2. Plaintiff shall have an opportunity to depose defendant's experts until May 15, 2006.

3. Plaintiff shall file its Appendix A pretrial materials by July 1, 2006. Plaintiff shall submit its trial exhibits to defendant by the same date.

C:\Documents and Settings\Borrower\Desktop\caddell Joint_Status_Report_2.12.06.wpd

4. Defendant shall file its Appendix A pretrial materials by August 1, 2006. Defendant shall submit its trial exhibits to plaintiff by the same date.

5. The court will schedule a pretrial conference at its convenience any time after August 1, 2006.

6. The Court will schedule a trial in Jackson, Mississippi, at its convenience any time after the pretrial conference.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0391
Fax: (202) 353-7988
Attorneys for Defendant

s/David W. Mockbee
David W. Mockbee
MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, 10th Floor
317 E. Capitol Street
Jackson, MS 39201
(601) 353-0035 - Telephone
(601) 353-0045 - Facsimile
Attorney for Plaintiff

Case 1:04-cv-00461-BAF Document 425 Filed 02/21/2006 Page 1 of 2

# In the United States Court of Federal Claims

**No. 04-461C**

**(Filed February 21, 2006)**

* * * * * * * * * * * * * * * * * * * * * * * *
**CADDELL CONSTRUCTION CO., INC.** *
**Plaintiff,** *
**v.** *
**THE UNITED STATES,** *
**Defendant.** *
* * * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

Pursuant to the Joint Status Report filed on February 14, 2006, the following schedule for further proceedings is hereby ADOPTED:

1. Defendant's experts will conclude their work and issue reports by Friday, April 14, 2006.

2. Plaintiff shall have an opportunity to depose defendant's experts until Monday, May 15, 2006.

3. Plaintiff shall file its Appendix A pretrial materials by Monday, July 3, 2006. Plaintiff shall submit its trial exhibits to defendant by the same date.

4. Defendant shall file its Appendix A pretrial materials by Thursday, August 3, 2006. Defendant shall submit its trial exhibits to plaintiff by the same date.

5. A pretrial conference shall be held on Thursday, August 10, 2006 at 2:30 P.M. in Chambers at the U.S. Court of Federal Claims, 717 Madison Place, NW, Washington, D.C. The trial date and location shall be determined at that time.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**

From: lhall@mhdlaw.com
Sent: Thursday, April 27, 2006 6:22 PM
To: Smith, Brian (CIV)
Subject: RE: caddell

Attachments: tmp.htm

Brian--I have no problem with the report except that I would like the opportunity to file a rebuttal expert report if needed on or before oct. 15. also the report doesn't mention our agreement that you would produce your experts in Jackson. I assume the report would not be an appropriate place for that but I would like it in writing. thanks

-----Original Message-----

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]

Sent: Thursday, April 27, 2006 2:31 PM

To: Lesa Hall

Subject: RE: caddell

L,

Per our call, here's a proposed status report.

-- B

-----Original Message-----

From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]

Sent: Tuesday, April 25, 2006 8:50 AM

To: Smith, Brian (CIV)

Subject: caddell

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Futey)
UNITED STATES OF AMERICA, )
)
Defendant. )

**JOINT STATUS REPORT**

Based upon a modification to the anticipated completion of work by defendant's experts, and the Court's availability for a two-week trial in early 2007, the parties have conferred and propose the following pretrial schedule.

1. Defendant's experts will conclude their work and issue reports by July 14, 2006.

2. Plaintiff shall have an opportunity to depose defendant's experts until September 1, 2006.

3. Plaintiff shall have the opportunity to submit rebuttal expert reports by October 15, 2006, after which the rebuttal experts will be deposed by defendant prior to December 1, 2006.

4. Plaintiff shall file its Appendix A pretrial materials by December 1, 2006. Plaintiff shall submit its trial exhibits to defendant by the same date.

5. Defendant shall file its Appendix A pretrial materials by January 15, 2007. Defendant shall submit its trial exhibits to defendant by the same date.

K:\My Documents\Caddell\status report re trial schedule.wpd

6. The Court will schedule a pretrial conference at its convenience any time after January 15, 2007.

7. The Court will schedule a trial in Jackson, Mississippi, during the first half of March 2007, with an estimated duration of two weeks.

8. The parties request that the Court accept the use of electronic exhibits at trial.

If the Court is unable to conduct the trial in the first half of March 2007, the parties may wish to propose a revised pretrial schedule based upon the actual trial date.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

s/David W. Mockbee
MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, 10th Floor

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Monday, May 01, 2006 2:58 PM
To: Lesa Hall
Subject: RE: Caddell status call

In advance of a (only slightly) more formal request for documents for the experts, to be sent to you tomorrow, I'll indicate to you now that, rather than a lengthy list of specific documents (which you'd surely opt to provide access to docs in course of business rather than pull the specific docs for us (let me know if this assumption is wrong)) , we simply seek access to project and financial records from Caddell, SSC, EEE, AMW and WBE. Ideally the experts (primarily Mr. Cotton) would like to coordinate visits to each company in a series of (1-day?) stops to occur at the end of May or early June.

If you concur with this concept, I'll send you the list tomorrow so you can pass it down the line, and we can start getting dates booked on the calendar.

Thanks,

-- Brian

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 02, 2006 12:17 PM
To: Lesa Hall
Subject: RE: Caddell: Informal discovery requestl

Lesa,

In order to further our experts' analysis, we request access to records maintained by the following entities at their places of business: Caddell, SSC, EEE, AMW, WBE.

Ideally, our experts can inspect documents (similar to how they reviewed docs in Jackson), during a single, multi-stop, trip. We propose that to take place during the Memorial Day week (i.e. May 30-June 2, or during the week of June 12-16. Assuming no unforeseen problems, we will schedule one day for each visit.

To define the scope of what we seek in more detail, I am attaching an internal working/draft list of specific document/types sought as an "including but not limited to" list.
In more general terms, however, the experts need to see all documents that relate to each company's work on this project, their respective sub/contracts, change orders, scheduling materials, and correspondence, as well as non-job specific financial information such as financial statements, previous audits, overhead rate information, etc. Although we will take advantage of the previous work done by DCAA, and hope that will eliminate some of the information sought from each entity (see the checked items on the list), we request access to the original documents maintained by the contractor/s as well.

I understand the issue of your "control" of EEE and WBE, but I'm sure you understand that if any money is being sought on their behalf (or as a result of payments made to them) in this case, then we are entitled to discovery. Of course, we are prepared to be cooperative in this regard.

Also, please verify that the Jackson collection contained ALL working papers used in preparation of the REA/claim/s. If not, please identify the location and nature of any additional docs that were relied upon, or simply send them to me.

Thanks,

-- Brian

From: lhall@mhdlaw.com
Sent: Tuesday, May 02, 2006 1:48 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell: Informal discovery requestl

Brian--I have a problem with this type of request made this late in this case, being 3 months after the discovery deadline has expired, in a case that has been pending for more than 3 years and 3 months after you came to look at ssc's documents -- this is clearly not the kind of "clean-up" of details that you insinuated. I suggest that you narrow your request to what you really need instead of a laundry list of everything your experts can think of that they might like to see. Otherwise, you will need to explain to the judge why this request is needed and why it is so late in coming.

Also, I assume that what you want from ssc you and/or your experts tagged for copying--I believe that the ssc files produced are all project files and/or other info used to prepare the rea including the originals of ray vinson's files. I will confirm my belief.

Assuming we reach agreement on a much narrower scope, I am not available at the times you indicate because of a trial in new jersey.

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 02, 2006 1:03 PM
To: Lesa Hall
Subject: RE: Caddell: Informal discovery requestl

L,

I realize that the requests look voluminous but they really are not. For example, AMW's file on this job cannot possibly be very thick, nor is the non-job-specific financial information. In contrast, the documents in Jackson are quite voluminous and we could not have known what was included/excluded until they were reviewed (something which has to be done by the experts and can't be done by me). In any event, it IS "cleanup" to ask for everything that was not in the SSC docs in Jackson that relates to the project -- in theory everything that relates to the claim should be located in one place (where the claim prep/experts did their work), but this is not the case. Surely coordinating a one-day review of documents at each subcontractor for whom $$$ is sought in this claim is not burdensome and the information is clearly discoverable.

Further, I don't agree that the "discovery deadline has expired" -- we have moved it by consent and expert analysis, by definition, includes the gathering of information.

As an alternative, however, if I can obtain a more narrow set of requests AND you will see that the information is sent to us instead of us visiting, we might be able to avoid the in-person visits, and the logistical issues that entails. Let me know if that is more palatable.

Either way, we do need to obtain additional information from these sources and it is hardly "late" relative to the time our experts inspected documents in Jackson. Obviously, if we engage in a protracted debate over these points, it will affect our ability to complete expert discovery by the times we have proposed to the Court.

-- Brian

From: lhall@mhdlaw.com
Sent: Tuesday, May 02, 2006 2:15 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell: Informal discovery requestl

Brian--I am not convinced. I suggest you get the list of what you have to have. We can agree to disagree and get the court's ruling or you can get reasonable with your requests--you choose.

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Friday, May 05, 2006 2:54 PM
To: Lesa Hall
Subject: RE: caddell/document request

L,

We had our discussion at the exact time that our experts were examining the documents in your office which, as evidenced by the requests, do not contain complete information with regard to the claim. For that reason, surely you don't think I was committing to no further document requests at that time we were discussing the new schedule.

I'm going to send you a re-formatted and slightly edited request on Monday. I will say now, however, that while some items will be removed, the overall substance of the requests will not change. We are entitled to examine the basis for Caddell's claim and the support, or lack thereof, for the costs sought. We are not obligated to rely solely upon DCAA (who did not conduct a complete audit anyway) and we don't intend to do so. All of the information we seek is plainly discoverable.

Whether or not the Judge agrees to our proposed schedule, we need this information to properly evaluate your case.

Perhaps we can talk after you get our edited request list on Monday and see if we can get the matter resolved prior to Tuesday afternoon's status conf.

-- Brian

From: lhall@mhdlaw.com
Sent: Friday, May 05, 2006 4:23 PM
To: Smith, Brian (CIV)
Subject: RE: caddell/document request

Brian--your memory is faulty--the day you were in my office, with your experts, we talked on ly about your need for an extension to file your report. we thereafter talked by phone about that agreement to firm things up which is the first time you mentioned basically as an aside and to make sure you weren't misleading me, the documents that you said your experts needed for "clean-up" which you assured me would not be a big deal and under those circumstances, I agreed to cooperate--I did not ever agree to wholesale discovery.

To give you an idea of how utterly incredible your requests are -- particularly at this s tage of this case -- are the requests for caddell financial statements and audits--caddell's only monetary claim is a mark-up. So, I can assure you they will not be willing to produce f/s and audits--another example, how are audits on other jobs relevant at all.

Brian, I could continue but I don't have the space or the time to deal with your overly broad, irrelevant and most untimely requests. I again urge you to identify what you really need and I will not have any problem cooperating. Otherwise, all bets are off and your reports which were due april 14 are overdue and we will object to any attempt to extend the deadline or to reopen discovery which was to be complete months ago.

I strongly suggest that you call me Monday to resolve this. As it stands now--you know what my position will be with the judge on Tuesday.

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Monday, May 08, 2006 11:56 AM
To: Lesa Hall
Subject: Caddell v. U.S.: Attempt to resolve potential discovery dispute

Lesa,

In the hopes of avoiding a motion to compel, I have requested our experts to provide explanations as to why each category of documents is requested. Normally this is not required, especially for informal discovery, but in the hope of avoiding proceedings before the Court, I offer it to you now. Because we have edited several of the previously-requested documents from the list, please consider this to be our current request.

Please note that, as I have emphasized previously, this list is not necessarily meant to require you or anyone at the respective claimant companies to gather this information, have it copied, and present it to me (although that is your option). Instead, some of the requests simply require an indication of whether the information sought has already been produced in Jackson (i.e. the claim prep workpapers), whether the type of claim being pursued obviates any relevance of the information (i.e. Caddell's direct/indirect cost information), or even whether the type of information sought does not exist.

Further, the list was originally designed simply to guide you and the claimants in providing access to records as they are kept in the course of business in advance of an anticipated one-day visit by our experts to the site/s of the information, which requires a minimum amount of effort (one hour?) by a single person knowledgeable about the records of each claimant. With these two points in mind, you cannot argue that our requests are "unduly burdensome." Considering the multitude of claimants seeking extra compensation from the Government in this case, they are certainly not overbroad.

Once the purpose and nature of each request is clarified to you, your main objection papers only to be the timing in which we presented them. Surely you did not expect our experts to have known in detail what they would see in Jackson prior to conducting their inspection, and you are understandably not representing that the claim is entirely supported only by the documents in Jackson, so a request for additional information was certainly foreseeable. The time between the Jackson inspection and now is trivial.

Also, the fact that I visited the documents in Jackson in order to prepare for the depositions of SSC's experts is meaningless inasmuch as none of the documents requested were in Jackson. You know, I hope, that experts independently gather information to do their work, rather than relying solely upon Government fact discovery anyway.

Please reconsider your refusal to provide any of this information. We still stand ready either to receive this information if it is gathered and sent by the claimants.
Or, if you choose, to organize a document inspection at the site/s of the information.

Obviously, our continuing lack of access to this information is causing delay in our experts' ability to complete their work and produce their reports.

-- Brian Smith

From: lhall@mhdlaw.com
Sent: Monday, May 08, 2006 4:00 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell v. U.S.: Attempt to resolve potential discovery dispute

Again, I urge you to call me if you wish to try to resolve this in advance of tomorrow's conference call. Also, I do think it burdensome for me to tell you what info you need or don't, whether you have it or don't. that is your job or your expert's job. Not mine.

Also, I have never said I would not cooperate with you and continue to make that offer. My problem is and continues to be the scope of the request and the relevance in addition to the timing. I now get to produce steel service's documents 3 times, months after the discovery deadline. I am certainly willing for you to view documents from the other claimants but I would assume that after this much time you would know what you need and not waste time with the kind of requests that you are making.

I do not see any need to respond further by email. I have continuously invited you to call to discuss these issues which I think need to be considered on a request by request basis

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 09, 2006 4:38 PM
To: Lesa Hall
Subject: Caddell v. U.S. Discovery dispute and proposed pretrial schedule.

Lesa,

Following up on our status conference with Judge Futey today, we have seven full months between now and the pretrial conference. There is ample time for our experts to obtain the discoverable information they seek, perform their analysis, issue their reports and for you to take their depositions (plus rebuttal reports/depositions if you choose) prior to a November 1 (for example) pretrial filing by Caddell.

If you wish to stand on the principle that my requests are "untimely" you may do so and I will file a motion to compel quickly so the unresolved dispute can be noted in our proposed schedule next week (it will not be possible to specify dates for expert reports until this matter is resolved).

Once again, the information we seek is routine audit/schedule analyst data. Perhaps part of our disagreement arises from the fact that Mr. Cotton seeks some of the same [types of] information that was examined by DCAA. If it clarifies things, we are not obligated, nor o we intend to, rely solely upon the DCAA's previous audit for our response to Caddell's damages claims. The audit was part of the contracting officer's analysis of the certified claim and, essentially, has little/nothing to do with litigation. Because Caddell chose to appeal the contracting officer's decision in litigation, it must produce discoverable information in discovery. In addition, Caddell has made revisions to the claim after filing suit (including a new expert witness and revised damages), which illustrates the fact that Caddell cannot claim to have "already" provided complete information related to its claim/damages. While DCAA's workpapers MAY help short circuit that process, we cannot depend upon that, and can't afford to wait until DCAA's records are available (they are in New Orleans and are difficult to obtain quickly, though we are attempting to do that right now) before seeking additional information from Caddell.

Please revisit your refusal to permit our experts to visit the claimants and examine the documents/information sought in our requests, or for the claimants to supply the requested information without a visit from our experts.

If we cannot arrange for these document productions by the end of the week, I'll file the motion to compel prior to our proposed pretrial schedule filing next Wednesday.

-- Brian

MOCKBEE HALL & DRAKE
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
LAMAR LIFE BUILDING. SUITE 1000
317 EAST CAPITOL STREET
JACKSON, MISSISSIPPI 39201

DAVID W MOCKBEE
MARY ELIZABETH HALL
DANNY A. DRAKE
DAVID B DENISON
ALEXANDER F. GUIDRY

TELEPHONE: (601) 353-0035
FACSIMILE: (601) 353-0045

May 15, 2006

4460.035

<u>**VIA E-MAIL, FACSIMILE and FIRST-CLASS MAIL**</u>

Brian S. Smith, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20503

Re: Caddell Construction Co., Inc. v. United States of America in the United States Court of Federal Claims

Dear Brian:

In response to your May 8th and 9th electronic messages concerning your proposed document requests, my response is simple:

First, this case was filed March 19, 2004. From that date until January 23, 2006 - almost two (2) years - the government took absolutely no action other than to repeatedly move for additional time. In fact, by my count, the government has requested and we have agreed to at least seven requests for time extensions, extending the discovery deadlines, among others, from approximately April 2005 (Supplementary Joint Preliminary Status Report) to January 31, 2006 (Court's October 21, 2005 Order), and now you seek an additional extension for your experts from April 14, 2006 to July 14, 2006. However, as of this date, you have never requested that the Court's October 21, 2005 Order, setting the discovery deadline at January 31, 2006, be extended.

Prior to the January 31, 2006 discovery deadline, you traveled to Jackson on January 23, 2006 to review documents and to depose certain witnesses on January 24-26, 2006. Your experts traveled to Jackson for the first time on March 24, 2006 to review documents after giving me notice of that trip by your March 15, 2006 e-mail.

On March 24, 2006, you mentioned for the first time that you needed an extension of the April 14, 2006 deadline for filing of

your expert reports until July 2006 to which I objected. We attempted to contact the Court with regard to a potential trial date. By e-mail dated March 31, 2006, you advised me that the Court had contacted you, that you would propose a schedule leading to a February 2007 trial, and that you would provide me a "list of follow-up requests for discoverable information that was not contained in the boxes in [my office]. As a part of that, our financial expert will dialog directly with DCAA to avoid obtaining identical information that was already provided to them."

Thereafter, on May 2, 2006, I received for the first time via e-mail your proposed document request, listing 53 separate requests for production of documents - - over three months after the discovery deadline.

In short, aside from the substantive issues of your proposed document request, addressed below, you have had over two years to conclude your discovery. You did not even start discovery until approximately two weeks before the discovery deadline. You have not requested an extension of the discovery deadline and you initiated your first informal request for documents three months after expiration of the last discovery deadline.

Next, with regard to your informal document request, I note the following:

First, I assume that the checkmark indicates that you have copies of those documents and that I need not further respond. If I am incorrect, please advise and I will further respond.

Second, with regard to your unnumbered informal document requests I note the following:

(1) SSC-EEE contract, correspondence, etc. – my understanding is that we produced to you the complete Steel Service file. However, I have asked Steel Service to ascertain what files, if any, it may still have regarding this project and I will let you know.

(2) SSC and Williams-Beasley -- see above.

(3) SSC and American Metal Works -- see above.

(4) SSC and EEE correspondence related to invoices -- see above.

(5) SSC Production Reports from January 1996 - December 1997 -- see above. I have made specific inquiry for these documents and will let you know.

(6) Notes, memoranda, and calculations supporting SSC's bid -- I am advised that all such documentation is contained in Steel Service's files reviewed by you.

(7) CMS files -- I am advised that there may be some additional work papers which may or may not be duplicates of those already produced. Those work papers will be produced in Jackson at a time convenient to counsel.

(8) Caddell Financial Statements -- Caddell's only claim in this matter is a mark-up on the total claim. Therefore, these documents are irrelevant.

(9) SSC Financial Statements -- previously supplied to auditors. You should obtain from DCAA.

(10) Williams-Beasley Financial Statements for 1995-1998 -- by copy of this letter to Williams-Beasley's counsel, I refer the request to them.

(11) American Metal Work Financial Statements -- said documents will be produced in Jackson at a time convenient to counsel.

(12) EEE Financial Statements -- I do not have copies of these which are requested from 1994-1998 and do not know if they exist, I will inquire.

(13) Caddell Audits from and after 1996 -- see above regarding Caddell financial statements.

(14) SSC Audits -- To the extent there are any, they would be in the DCAA Auditor's files.

(15) Williams-Beasley Audits -- see above with regard to Williams-Beasley financial statements.

(16) American Metal Works Audits -- the government should have any such audits by virtue of the DCAA audit.

(17) EEE Audits -- see above with regard to financial statements.

(18) CDR Consultants' document request -- The 15 separate requests by CDR (with the exception of the SSC plant production schedules referenced above) should be in the VA's files and/or the DCAA files and/or the files already produced by Steel Service.

In summary, I agree to voluntarily produce those documents referenced above and to forward your request to Williams-Beasley and to EEE. With regard to CDR's request and/or those requests for documents that the VA and/or the DCAA have or should have, I suggest that you obtain the documents from those sources.

I am not willing to make any interim deadlines contingent per your May 14, 2006 e-mail request and I suggest that you include your request for same in a motion. Brian, as I trust I have made clear, I will entertain your reasonable requests but I am not willing to continue to agree to extensions for you that will obviously only lead to a request by you to continue the trial.

In closing, if you do not agree to these terms, I suggest that you move to compel.

I am also interested in the date you retained your experts.

Sincerely,

MOCKBEE HALL & DRAKE, P.A.

Mary Elizabeth Hall

MEH/cmm

cc: David W. Mockbee, Esq.
James A. Simonson
Danny Thomas
Brian Carroll, Esq.
L. Ray Vinson
Earl Edgil
(All via fax)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Bohdan A. Futey)
)
UNITED STATES OF AMERICA, )
)
Defendant. )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPLETE PRE-TRIAL SCHEDULE UPON RESOLUTION OF DEFENDANT'S MOTION TO COMPEL**

Plaintiff, Caddell Construction Co., Inc. ("Caddell"), responds to Defendant's Motion to Complete Pre-Trial Schedule Upon Resolution of Defendant's Motion to Compel as follows:

1. First, contrary to Defendant's contention, Caddell has not failed to comply with the Rules regarding disclosure of information related to its claim. To the contrary, Caddell has produced approximately 20 legal-sized boxes of documents to Defendant and Defendant, three months after the expiration of the discovery deadline, submitted an informal request to Caddell for 53 separate requests for production of documents, many of which have already been produced, many of which Caddell agreed to produce, and the rest are contained in the Defendant's files.

2. Moreover, Defendant's experts did not, to Caddell's knowledge, even start their work on this project until March 23, 2006 - - less than one month before their expert reports were due and almost two months after the discovery deadline.

3. In short, Defendant's purported inability to propose a complete Pre-Trial Schedule is due to Defendant's own lack of diligence as will be more fully explained by Caddell in response to the anticipated motion to compel which Defendant has been threatening to file for over three (3) weeks.

F:\docs\HALLL\PLD\4460035 Plf Resp to Def Mot Pretrial Schedule re Compel.wpd

Case 1:04-cv-00046-BAF Document 42 Filed 05/18/2006 Page 6 of 20

WHEREFORE, PLAINTIFF, CADDELL CONSTRUCTION CO., INC., requests that this Court deny Defendant's Motion and enter the Pre-Trial Schedule as proposed by Plaintiff in response to this Court's Order dated May 9, 2006.

Respectfully Submitted,

CADDELL CONSTRUCTION CO., INC., PLAINTIFF

By: /s/ David W. Mockbee
David W. Mockbee
Mary Elizabeth Hall
MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, Suite 1000
317 E. Capitol Street
Jackson, MS 39201
(601) 353-0035 - Telephone
(601) 353-0045 - Facsimile
ITS ATTORNEYS

**CERTIFICATE OF SERVICE**

I, David W. Mockbee, do hereby certify that I have this day caused to be filed via the Official Electronic Document Filing System of the United States Court of Federal Claims ("CM/ECF") a true and correct copy of the above and foregoing Plaintiff's Response to Defendant's Motion to Complete Pre-trial Schedule Upon Resolution of Defendant's Motion to Compel. Copies of this document will be transmitted via the Court's CM/ECF System to all counsel of record. Additional copies may be obtained through the Court's CM/ECF System.

Dated: May 18, 2006

/s/ David W. Mockbee
David W. Mockbee

F:\docs\HALLL\PLD\4460035 Plf Resp to Def Mot Pretrial Schedule re Compel.wpd

DRAFT

# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT NO. 1751-98J17200002

**PREPARED FOR:** Contracting Officer (186A)
ATTN: Milan Srskic
Office of Facilities Management
Department of Veterans Affairs
810 Vermont Avenue N. W.
Washington, DC 20420

**PREPARED BY:** Gulf Coast Branch Office
P.O. Box 1244
Pascagoula, Mississippi 39568-1244
Telephone No. (228) 938-1720
FAX No. (228) 769-9166
E-mail Address *fao1751@rea.dcaa.mil

**SUBJECT:** Report on Audit of Subcontractor Equitable Adjustment Proposal Related to Steel Fabrication of Phase 1 VAMC, Memphis, TN

**REFERENCES:** VA Audit Control Number 8PE-N02-007
Prime Contract No. V101BC0133, Project Number 614-011

**SUBCONTRACTOR:** Steel Service Corporation
2260 Flowood Drive
Jackson, MS 39208

**REPORT RELEASE RESTRICTIONS:** See Page 27

**CONTENTS:**

| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 2 |
| Results of Audit | 4 |
| Subcontractor Organization and Systems | 27 |
| DCAA Personnel and Report Authorization | 28 |
| Audit Report Distribution and Restrictions | 29 |
| Appendixes | 30 |

**FOR OFFICIAL USE ONLY**

| Home Office Overhead Rate | X | Days Delay | = | Amount Recoverable |
|---|---|---|---|---|
| $833 | X | 660 | = | $549,780 |

Note the Eichleay daily rate was calculated over the period of May 1996 to August 1998 (28 months at 30 days a month for a total of 840 days). Delay days were calculated as total days of 840 less SSC's stated planned performance period of six months (180 days) for a total of 660 delay days. The August data was used as the cut off since it was the latest actual cost data provided during our audit fieldwork. Since overhead cost appeared to be generally level to declining in the out years, inclusion of actual data for months past August 1998 would not appear to materially alter the above calculation since increases in total contract billings, total overhead, total contract days, and total delay days would offset each other.

Finally, questioned unabsorbed overhead should be increased for any delay days that are not ultimately found to be the government's fault. Questioned cost should be increased by $833 for each such day.

8. Williams-Beasely

We were advised by the VA not to perform or request an assist audit on this second tier subcontractor. Accordingly, we have classified these costs in the amount of $208,323 as unresolved.

9. American Metal Works

a. Summary of Conclusions:

We question proposed costs for this second tier wholly owned subsidiary subcontractor in the amount of $141,763 in its entirety due to a lack of auditable support. However, in the event that it is later determined this portion of Steel Services equitable adjustment proposal is with merit and a government caused delay affecting this second tier subcontractor did occur, we calculated a daily overhead rate of $105 to be applied to any government caused delayed days.

b. Basis of Subcontractor's Cost:

The subcontractor proposed costs for this related second tier subcontractor are as follows:

| | |
|---|---|
| Unabsorbed Overhead for 1996 | $ 83,755 |
| Unabsorbed Overhead for 1997 | 40,000 |
| Increased Wage Rates | 4,188 |
| Increased Overhead Rate | 13,820 |
| **Total** | $141,763 |

**STEEL SERVICE CORPORATION**
**2260 Flowood Drive**
**Jackson, Mississippi 39215**

# CLAIM
# FOR
# EQUITABLE
# ADJUSTMENT

**VOLUME 2 of 2**

**VA Seismic Modernization/Phase I**
**Memphis, Tennessee**
**SSC #997**

**Prepared by:**

**Construction Mediation Services**
**1120-B 21st Street**
**Columbus, Georgia 31901**

**October 31, 1997**


Rec'd volume 2

## G. SUMMARY

The additional cost is summarized as follows below:

| | | | |
|---|---|---|---|
| A. | Additional Engineering Cost | | $ 105,500.00 |
| B. | Delay Cost to the Fabricator (Unabsorbed Overhead) | | ~~845,384.00~~ 950,884.00 |
| C. | Loss of Overhead Due to the Rescheduled Project Being Further Delayed | | ~~547,166.00~~ |
| D. | Subcontractor Claims | | 959,884.00<br>310,248.02<br>1,261,132.00 |
| | 1. EEE Detailing Services, Inc. | $310,248.94 | |
| | 2. Williams-Beasely Erection | ~~95,006.73~~ | |
| | 3. American Metal Works | ~~141,763.00~~ | 547,018.67 |
| E. | Other Direct Cost | | 1,261,132.00<br>28,000.00<br>1,289,132.00 |
| | 1. Increase in Overhead Rates From 1996 to 1997. | ~~$122,500.00~~ | |
| | 2. Increased Cost As a Result of Subletting | ~~190,440.00~~ | |
| | 3. Efficiency Losses | ~~93,465.00~~ | ~~406,405.00~~ |
| F | Preparation Cost (Estimate) | | ~~75,000.00~~ |
| | | SubTotal | $2,526,473.67 |
| | Profit | | ~~252,647.37~~ |
| | Bond | | 28,000.00 |
| | Disputes Act Interest* | | ~~100,000.00~~ |
| | | Claim Amount | $2,907,121.04 |

Handwritten margin notes: "COSA IS COSA IT" (beside D.2); "COSA IT" (beside E.2); "(May be owed to SSC 84 capability VA)" (beside E).

* = A six month allowance is provided for Disputes Act Interest. The amount will be adjusted to final time, rates and amounts.

Handwritten: I see no validity to this claim

X-46

## G. SUMMARY

The additional cost is summarized as follows below:

| | | | |
|---|---|---|---|
| A. | Addl Engineering Cost Revised 6-17-98 | | $ 404,776.75 |
| B. | Delay Cost to the Fabricator (Unabsorbed Overhead) | | 800,199.00 |
| C. | Loss of Overhead Due to the Rescheduled Project Being Further Delayed | | 427,966.00 |
| D. | Subcontractor Claims | | |
| | 1. EEE Detailing Services, Inc.- Revised 6-17-98 | $146,853.75 | |
| | 2. Williams-Beasely Erection | $208,322.73 | |
| | 3. American Metal Works | 141,763.00 | 496,939.48 |
| E. | Other Direct Cost | | |
| | 1. Increase in Overhead Rates From 1996 to 1997. | $122,500.00 | |
| | 2. Increased Cost As a Result of Subletting | 207,527.85 | |
| | 3. Efficiency Losses | | |
| | a. This project | 164,747.83 | |
| | b. Other projects | 279,732.15 | 774,507.83 |
| F | Preparation Cost (Estimate) | | 153,884.00 |
| | | **Subtotal** | **$3,058,273.06** |
| | Profit | | 305,827.31 |
| | Bond | | 33,000.00 |
| | Disputes Act Interest* | | 100,000.00 |
| | | **Claim Amount** | **$3,497,100.37** |

- = A six-month allowance is provided for Disputes Act Interest. The amount will be adjusted to final time, rates and amounts.

- **Revised August 15, 1998**

REA-R-X-54

IN THE UNITED STATES COURT OF FEDERAL APPEALS

CADDELL CONSTRUCTION COMPANY., INC. PLAINTIFF

V. NO. 04-461C
(JUDGE BOHDON A. FUTEY)

UNITED STATES OF AMERICA DEFENDANT

DEPOSITION OF RAY VINSON

Taken at the Instance of the Defendant
In the Offices of Mockbee, Hall & Drake
Tenth Floor, Lamar Life Building
317 East Capitol Street
Jackson, Mississippi

January 24, 2006

APPEARANCES:

MARY ELIZABETH HALL
Mockbee, Hall & Drake
327 East Capitol Street, Tenth Floor
Jackson, Mississippi 39201

(REPRESENTING THE PLAINTIFF)

BRIAN SMITH
DEPARTMENT OF JUSTICE
Room 4054
1100 L Street N.W.
Washington, DC, 20530

(REPRESENTING THE DEFENDANT)

REPORTED BY: Vicki H. Bennett, C.S.R., No. 1151
Court Reporter & Notary Public

A. Yes.
Q. Did you do those revisions?
A. Yes.
Q. What was the impact of those revisions on the $3.497 million figure?
A. Reduced the claim by 100,000, 200,000, somewhere in that range.
Q. When did that occur? When did you do the DCAA revisions?
A. It was basically in response to a meeting I had with the auditors I'm going to say '99. Okay? I went to New Orleans and met with the auditors and discussed concepts, and et cetera. And one of the particular concepts that DCAA presented, after hearing their thing, I agreed with them that, yes, this thing needs to be revised. So I went back and I calculated the effect of that and wrote them a letter and said, Okay, here it is, you were right. And I gave them the numbers.
Q. But did you produce another version of this page that we're looking at, at X-54?
A. I did not at that time. I just gave them the data and the numbers and told them. But I have subsequently.
Q. So there's a newer version of the summary?
A. Just the summary, yes.
Q. Do you recall what the gist of the 100,000 or so

Q. Will that further revision to the marked up version of X-54 raise or lower the total?

A. My recollection is it will slightly lower the claim.

Q. When were the changes that you have reflected in the marked up version of X-54 done?

BY MS. HALL:

Object to the form.

A. The summarization that you see in front of me, I only compiled today. The calculations as to the summary numbers were done in 1999.

Q. So the marked up version of X-54, this actual piece of paper, you said you did that today?

A. Yes.

Q. But the calculations that are reflected in the marked up version of X-54 are something that came out of your dialogue with DCAA?

A. Yes, the June 1999.

BY MS. HALL:

Would you like for me to get a copy of that?

BY MR. SMITH:

No, I'm basically done with it anyway.

Q. The complaint seeks the original amount. I'm sorry. It seeks the 1998 amount, that is, the 3,497,000. That number should be revised. Right?

A. I would assume. I'm not in that end of it, understand.

BY MS. HALL:

It's a legal issue.

Q. Not to pursue it too far --

BY MS. HALL:

It was intended not to be an official objection or statement.

Q. Did you formulate the complaint?

A. No.

Q. Have you read it?

A. I don't think so. I don't remember reading it.

Q. The REA is your work product. Is that right?

A. Yes.

Q. Well, I know there are portions of it. I have seen is an attachment, then you have an expert report from somebody who we will talk about in a bit, and then you have a legal memo prepared by Ms. Hall's firm.

A. Yes.

Q. Do you remember incorporating those into the REA?

A. Yes.

Q. The remainder of the REA, though, is yours or your company's work. Right?

A. Not completely because I needed assistance with the EEE Detailing, for instance, on certain portions of it.

change order, make changes in the work within the general scope of the contract, including changes -

(1) In the specifications (including drawings and designs);
(2) In the method or manner of performance of the work;
(3) In the Government-furnished facilities, equipment, materials, services, or site; or
(4) Directing acceleration in the performance of the work.

(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating (1) the date, circumstances, and source of the order and (2) that the Contractor regards the order as a change order.

(c) Except as provided in this clause, no order, statement or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing. However, except for an adjustment based on defective specifications, no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required. In the case of defective specifications for which the Government is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with the defective specifications.

(e) The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting to the Contracting Officer a written statement describing the general nature and amount of proposal, unless this period is extended by the Government. The statement of proposal for adjustment may be included in the notice under Paragraph (b) above.

(f) No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract.

1.34 CHANGES - SUPPLEMENT (For Changes Over $500,000) (VAAR 852.236-88 (a)) (JUN 1987)

The clauses entitled "Changes" in FAR 52.243-4 and "Differing Site Conditions" in FAR 52.236-2 are supplemented as follows:

(a) When requested by the Contracting Officer, The Contractor shall submit proposals for changes in work to the Resident Engineer. Proposals, to be submitted within 30 calendar days after receipt of request, shall be in legible form, original and two copies, with an itemized breakdown that will include material, quantities, unit prices, labor costs (separated into trades), construction equipment, etc. (Labor costs are to be identified with specific material placed or operation performed.) The Contractor must obtain and furnish with a proposal an itemized breakdown as described above, signed by each subcontractor participating in the change regardless of tier. When certified cost or pricing data are

required under FAR Subpart 15.804, the cost or pricing data shall be submitted on Standard Form 1411 (SF 1411), Contract Pricing Proposal Cover Sheet, in accordance with FAR 15.804-6.

(b) When the necessity to proceed with a change does not allow sufficient time to check a proposal or because of failure to reach an agreement, the Contracting Officer may issue a change order instructing the Contractor to proceed on the basis of a tentative price based on the best estimate available at the time, with the firm price to be determined later. Furthermore, when the change order is issued, the Contractor shall submit a proposal for cost of changes in work within 30 calendar days.

(c) The Contracting Officer will consider issuing a unilateral equitable adjustment to the contract, if the Contractor's proposal required by paragraphs (a) and (b) of this clause is not received within 30 calendar days, or if agreement has not been reached.

(d) Bond premium adjustment, consequent upon changes ordered, will be made as elsewhere specified at the time of final settlement under the contract and will not be included in the individual change.

1.35 CHANGES - SUPPLEMENT (For Changes Costing $500,000 or Less) (VAAR 852.236-88(b)) (JUN 1987)

The clauses entitled "Changes" in FAR 52.243-4 and "Differing Site Conditions" in FAR 52.236-2 are supplemented as follows:

(a) When requested by the Contracting Officer, the Contractor shall submit proposals for changes in work to the Resident Engineer. Proposals, to be submitted within 30 calendar days after receipt of request, shall be in legible form, original and two copies, with an itemized breakdown that will include material, quantities, unit prices, labor costs (separated into trades), construction equipment, etc. (Labor costs are to be identified with specific material placed or operation performed.) The Contractor must obtain and furnish with a proposal an itemized breakdown as described above, signed by each subcontractor participating in the change regardless of tier. When certified cost or pricing data are required under FAR 15.804 for proposals over $100,000, the cost or pricing data shall be submitted on SF 1411, Contract Pricing Proposal Cover Sheet, in accordance with FAR 15.804-6. No itemized breakdown will be required for proposals amounting to less than $1,000.

(b) When the necessity to proceed with a change does not allow sufficient time to negotiate a modification or because of failure to reach an agreement, the Contracting Officer may issue a change order instructing the Contractor to proceed on the basis of a tentative price based on the best estimate available at the time, with the firm price to be determined later. Furthermore, when the change order is issued, the contractor shall submit a proposal for cost of changes in work within 30 calendar days.

(c) The Contracting Officer will consider issuing a settlement by determination to the contract, if the contractor's proposal required by paragraphs (a) and (b) of this clause is not received within 30 calendar days, or if agreement has not been reached.

(d) Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based on the value of labor, material, and use of construction equipment required to accomplish the change. As the value of the change increases, a declining scale will be used in negotiating the percentage of

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CADDELL CONSTRUCTION CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04-461C |
| | ) (Judge Futey) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

DECLARATION OF BRIAN S. SMITH
IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

1. My name is Brian S. Smith. I am the trial attorney in the United States Department of Justice assigned to handle the litigation of this case.

2. I have personal knowledge of the matters herein, and declare, under penalty of perjury, that the following information is true and correct.

3. Caddell's document review in this case consisted of receiving a large volume of electronic documents from the Government and Caddell conducting a review of the Government's "design documents" in Washington, D.C. Caddell chose not to take any depositions during fact discovery.

4. I scheduled, then took, the depositions of Caddell's fact and expert witnesses in late January 2006, after conducting a brief one-day document inspection at Caddell's counsel's office to assist in preparing for the depositions.

5. After a review of the documents in defendant's counsel's possession, and a preliminary assessment of Caddell's claims and experts reports, on March 23 and 24, 2006, defendant's experts conducted an inspection of approximately 20 boxes of documents stored in Jackson, Mississippi, at Caddell's counsel's office.

6. During that document review, I met with Caddell's counsel and agreed to propose a modified schedule that was eventually based upon three factors: First, defendant's experts did not find the documents in Jackson to be complete or sufficient for a detailed review of Caddell's claim, particularly the damages elements. Second, Defendant's experts' schedules were such that quick completion of their work was impossible, even if complete information had been produced in Jackson. Third, counsel for the parties obtained an indication from the Court's office that the Court was not available for trial until 2007.

Brian S. Smith