IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CADDELL CONSTRUCTION CO., INC., )
)
Plaintiff, )
)
v. ) No. 04-461C
) (Judge Bohdan A. Futey)
)
UNITED STATES OF AMERICA, )
)
Defendant. )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff, Caddell Construction Co., Inc. ("Caddell"), responds to Defendant's Motion to Compel production of documents as follows:

**INTRODUCTION**

Defendant's Motion to Compel is meritless and should be denied because Defendant's Motion to Compel (1) is based on nothing more than an "informal discovery request";[1] (2) is contrary to the "agreement" reached between counsel which led to the filing of the

[1] As an initial proposition, Caddell questions Defendant's ability to move to compel since, as Defendant notes, it seeks to compel production of documents pursuant to an "informal discovery request." However, Rule 37(a)(2)(B) applies "if a party, in response to a request for inspection submitted under RCFC 34, fails to respond, . . . or fails to permit inspection. . . ." In this case, Defendant has never filed "a request for inspection submitted under RCFC 34." Therefore, Defendant has no legal basis for its Motion.

April 28, 2006 Joint Status Report (Doc. 36), whereby Caddell would not oppose Defendant's extension of time to file expert reports and would agree to produce "follow-up" documents in exchange for the opportunity to depose the Defendant's experts in Jackson, Mississippi and to submit rebuttal expert report(s), if necessary; (3) seeks production of documents having nothing to do with detailing, fabrication and erection of structural steel which is the subject of this dispute and/or which are already in Defendant's possession, custody or control; and (4) is untimely, having been submitted more than three (3) months after expiration of the discovery deadline.

## **STATEMENT OF FACTS**

### 1. The Project

This dispute concerns the construction of a 310,000 square foot steel frame addition and the renovation of the existing medical center, for the Veterans Administration in Memphis, Tennessee and a claim for delays and additional costs incurred by Caddell's structural steel fabricator and erector, Steel Service Corporation ("Steel Service"), and Steel Service's subcontractors

as contained in the two-volume Claim for Equitable Adjustment submitted to Defendant on or about February 3, 1998.[2]

Steel Service's claim, as confirmed by the VA documents produced to Steel Service in discovery[3], is that the structural steel design drawings were defective and incomplete and that those deficiencies and the VA's failure to timely respond to Steel Service's requests for information ("RFIs") caused Steel Service and its subcontractors to incur delays and additional costs.

In fact, in a memo prepared by the VA of the minutes of the April 25-28, 1995 meeting of 100% Document Review between the Defendant and its project architect, the VA noted as follows:

> 1. Due to the incomplete nature of many of the drawings, there is a serious concern for coordination between the disciplines . . .

---

[2] Defendant feigns ignorance of Caddell's claim for its percentage mark-up and suggests that "Caddell, apparently, wishes to keep [its mark-up] as a secret" (Motion to Compel, Doc. 42 at p. 9). However, as indicated by Caddell's February 3, 1998 letter to Defendant, transmitting Steel Service's claim, a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof, there is an attached "Recap Sheet with Prime Contractor's Fee" which shows "Caddell Fee" percentage and dollar amount. Therefore, Defendant has known since February 1998 that Caddell's only participation in this claim is its percentage mark-up on Steel Service's claim and what that percentage is.

[3] Defendant claims that it produced its documents electronically (Doc. 42, at p. 2, n. 2). Defendant forgets that Defendant arranged for Caddell to travel to the Project in Memphis, Tennessee to review and copy Defendant's Project files.

* * *

> 76. Structural drawings need a great deal of work; . . . still have many mistakes. Estimate 50% complete; will need resubmittal.

A true and correct copy of the April 25-28, 1995 memo is attached hereto as Exhibit "B" and made a part hereof.

The structural drawings obviously were never completed because the VA subsequently reduced the fee paid to its project architect by $43,060 because

> A. . . . the engineering Joint Venture partner, has not provided the quality control and coordination per the contract, especially with respect to the structural design.

* * *

> 13.b. The 085B structural engineer stated that the Final CD submission was actually about 40% complete, with many errors and omissions not the 90% complete the A/E certified. The entire project became in jeopardy due to the poor structural submission

* * *

> f. As of June 14, 1995 we are missing 7 critical drawings of details and column schedules.
>
> g. The [structural] drawings that were submitted as 100% still show many errors and omissions and require work to make a tight set of bid documents.

A true and correct copy of the June 14, 1995 Price Negotiation Memorandum is attached hereto as Exhibit "C" and made a part hereof.

Despite the VA's knowledge of the deficiencies in its structural design, it nonetheless issued the incomplete plans and specifications for bid and awarded the contract to Caddell. Then, during construction, at a time when it knew that Steel Service was preparing shop drawings in anticipation of steel fabrication, the Defendant "sat" on Steel Service's RFI's. At a meeting held April 18, 1996, among Steel Service, the VA and the VA's design team, Steel Service learned for the first time that its RFIs were not being answered because the structural engineer was not being paid by the VA. A true and correct copy of the April 18, 1996 memo is attached hereto as Exhibit "D" and made a part hereof.

As indicated by Caddell's February 3, 1998 letter, Caddell, on behalf of Steel Service and Steel Service's subcontractors submitted a claim for an amount in excess of $3 million. That claim was subsequently audited by the Defendant which, by letter dated May 19, 1999, issued a 47-page report (including the Appendix). A true and correct copy of the Audit Report is attached hereto as Exhibit "E" and made a part hereof. Steel Service, through its expert witness, L. Ray Vinson, responded to that Audit,

accepted certain revisions to the damages claimed and provided additional information[4]. A true and correct copy of L. Ray Vinson's June 24, 1999 letter is attached hereto as Exhibit "F" and made a part hereof.

After years of futile attempts to negotiate resolution with Defendant, Caddell, on behalf of Steel Service, filed suit on March 19, 2004 (A. 12).

2. The Lawsuit

As the following chronology reveals, litigating with Defendant has been as frustrating as Caddell/Steel Service's effort to negotiate pre-suit with Defendant. In short, it seems nearly impossible to get Defendant's attention.

Indeed, Defendant took four months, or until July 19, 2004, to file an answer to the Complaint, generally denying the allegations of the Complaint (Doc. 14). Thereafter, on September 29, 2004, the parties filed a Supplementary Joint Preliminary Status Report that contemplated an eight-month discovery period (Doc. 20, A. 14-15). Then, from September 29, 2004 until the February 14, 2006 Joint

[4] Defendant correctly notes that Steel Service has revised its damage claim on several occasions (Doc. 42, at p.14, n.11). Steel Service, as it is obliged to do, continues to review its damage claim and to revise it as appropriate. However, Defendant is aware of all such revisions which are relatively minor and which have never revised the methodology of Steel Service's claims.

Status Report (Doc. 34), Defendant requested multiple extensions to the discovery deadline, extending the original deadline of April 2005 to the January 31, 2006 deadline (Docs. 25, 28), set by this Court's October 21, 2005 Scheduling Order (Doc. 31), thereby extending an eight month discovery period to an eighteen month discovery period.

Caddell concluded its discovery and filed its expert reports on December 1, 2005[5], consisting of the Claim for Equitable Adjustment, prepared by L. Ray Vinson on October 31, 1997 and submitted to Defendant on February 3, 1998 (Doc. 33) and the expert report of Marshall T. Ferrell, P.E. (Doc. 32), after disclosing the identity and the substance of their anticipated testimony to Defendant informally prior to August 15, 2005 (Doc. 28-1).

Defendant, on the other hand, undertook absolutely no discovery until January 23, 2006 -- 2 weeks before the discovery deadline -- when it traveled to Steel Service and spent less than one-half day reviewing over 20 legal-sized boxes of documents,

[5] Defendant makes much ado of the fact that Caddell has requested one time extension during the entire course of this litigation (Doc. 42, at p.3), which extended its deadline for filing its expert reports from October 31, 2005 to December 2, 2005 (Doc. 31) which is a one month extension - - not 2½ months as Defendant notes (Doc. 42, at p.3). Defendant forgets that it had L. Ray Vinson's expert report as of February 3, 1998, being the Steel Service claim, and that Caddell disclosed the identity of its experts and their anticipated testimony to Defendant before August 15, 2005 (Doc. 28-1).

consisting of Steel Service's project files and the files of its expert witness, L. Ray Vinson, who became involved on behalf of Steel Service during the Project. During that same trip, Defendant deposed Caddell's two (2) expert witnesses, Steel Service's project manager and its president. At that time, Defendant did not copy any documents and did not indicate the need for further discovery. Affidavit of Mary Elizabeth Hall, Esq., Exhibit "G," attached hereto and made a part hereof.

Then, by e-mail dated March 15, 2006 -- forty-five (45) days after the expiration of the discovery deadline -- Defendant notified Caddell that Defendant's expert witnesses wished to review Steel Service's documents and intended to arrive on March 24, 2006. A true and correct copy of the March 15, 2006 e-mail is attached hereto as Exhibit "H" and made a part hereof. On March 24, 2006, Defendant arrived and mentioned for the first time its need to extend the April 14, 2006 deadline for filing its expert reports (Doc. 36), until July 2006, to which Caddell objected. Contrary to Defendant's contention, there was no mention of Defendant's or its expert witnesses' alleged need for additional documents. Hall Affidavit, Exhibit "G."

In fact, the issue of additional documents was not raised by Defendant until its e-mail dated March 31, 2006, a true and correct

copy of which is attached hereto as Exhibit "I" and made a part hereof, in which Defendant confirmed that he would propose to this Court a schedule for submission of Defendant's expert reports leading to a February 2007 trial date per Caddell's request and that he would provide a "list of follow-up requests for discoverable information that was not contained in the boxes in [Caddell/Steel Service's counsel's office]. As part of that, our financial expert will dialog directly with DCAA to avoid obtaining identical information that was already provided to them."

<u>Incredibly, Defendant does not share its March 31, 2006 e-mail with this Court</u> which was the very basis for Caddell's agreement to execute the April 28, 2006 Joint Status Report, extending Defendant's deadline for submitting expert reports to July 14, 2006 (Doc. 36).

Thereafter, by e-mail dated May 2, 2006 -- submitted after the April 28, 2006 Joint Status Report was filed -- Defendant, for the first time, transmitted via e-mail its "informal discovery request," listing <u>53 separate requests</u> for production of documents -- over three months after the discovery deadline - - and requesting much more than the "follow-up requests" which Caddell agreed to produce when it agreed to the extension for Defendant's expert reports. A true and correct copy of the May 2, 2006 e-mail

and attached proposed document request are attached hereto as Exhibit “J” and made a part hereof.

As indicated by Caddell’s counsel’s May 15, 2006 letter (A. 44-47), Caddell agrees to produce documents in response to 10 specific “follow-up” requests out of the 53 requests and objected to the remaining 43 requests for the reason that the documents were untimely requested, irrelevant and/or in the Defendant’s possession.

Instead of responding to Caddell’s May 15, 2006 letter, Defendant filed the instant Motion which fails to substantiate that Defendant is entitled to relief for its “informal discovery request.”

**ARGUMENT**

1. Defendant’s “Informal Discovery Request” is contrary to the Parties’ Agreement

Defendant neglects to tell this Court about the agreement that was made that led to the filing of the April 28, 2006 Joint Status Report, allowing Defendant’s experts to issue their reports on July 14, 2006, instead of April 15, 2006. That agreement, contained in Defendant’s March 31, 2006 e-mail, Exhibit “I”, stated that Defendant would be allowed an opportunity to identify “follow-up requests for discoverable information that was not contained” in Steel Service’s files already produced to Defendant, and that

Defendant's financial expert "will dialogue directly with DCAA to avoid obtaining identical information that was already provided to them."

Defendant breached that agreement when Defendant, on May 2, 2006 (Exhibit "J"), listed 53 separate requests for production of documents -- most of which Defendant (including the DCAA) already has and/or which are irrelevant and/or untimely requested.

As indicated by the May 15, 2006 letter, Caddell agreed that Defendant is entitled to reasonable "follow-up requests" and Caddell is more than willing to comply with reasonable requests (A. 44-47). But, Defendant seeks wholesale discovery of information which it already has and/or which is wholly irrelevant. That is the discovery to which Caddell objects as being beyond the scope of the parties' agreement and the issues in dispute in this case[6].

---

[6] Defendant suggests that its requests are proper because Steel Service has "modified or revised" its claim. However, as previously stated, although Steel Service has reduced the dollar amount of its claim based upon its subsequent reviews, Steel Service has never changed the method by which it computed its claim. Therefore, the fact that Steel Service has revised its claim -- regardless of the number of times -- does not entitle Defendant to the documents which it now informally seeks.

2. Defendant Seeks Irrelevant Documents

Despite its contentions to the contrary, Defendant seeks the following documents from Caddell which are completely irrelevant to this dispute:

- List of all disbursement transactions from Caddell to EEE Detailing -- EEE was Steel Service's subcontractor. Since Caddell and EEE did not have a contract or a subcontract, there are no such documents.
- Caddell financial statements from 1995-1998. Caddell does not have a claim in this case except for a percentage mark-up on the total of Steel Service's claims.
- Copies of all reports on audits of any Caddell activities from 1996 to the present. Caddell has no claim other than the percentage mark-up on Steel Service's claim.
- Copies of the most recent shop drawings/submittal log. This lawsuit involves only structural steel and, as Defendant acknowledges, the VA "probably has their version of the submittal/shop drawing log."
- Copies (preferably electronic) of all CPM schedules. Again, only the structural steel is involved in this dispute and, as the Government acknowledges, it has

"partial schedules showing only the structural steel." In any event, Defendant has all CPM schedules.

- Copies of approved REAs for any project time extension between the VA and Caddell. This lawsuit only concerns Steel Service's claim and Defendant has copies of all other REAs.
- Copies of any REAs submitted by Caddell to the VA for subcontractors other than Steel Service. Again, Steel Service's claim concerns only the structural steel fabrication and erection and Defendant has copies of any such REAs.
- Copies of monthly CPM schedule narratives from Caddell to the VA. This dispute concerns only the structural steel fabrication and erection and the Defendant has copies of the monthly narratives.
- Copies of any monthly progress reports prepared by Caddell for the VA. This dispute concerns only the structural steel fabrication and erection and the Defendant has copies of such reports.
- Electronic copies of the schedule of values/progress payments for the duration of the project. This dispute

concerns only the structural steel fabrication and erection and the Defendant has copies of such documents.

With regard to the remaining documents, as summarized in Caddell's May 15, 2006 letter (A. 44-47), Steel Service has made inquiry to ensure that it has all documentation necessary to substantiate its claim and its subcontractors' claims and/or as requested by Defendant. Contrary to Defendant's inference, Caddell did not just make inquiry of its subcontractors for any documents. To the contrary, Steel Service, as it should do, forwarded Defendant's request to its subcontractor claimants and asked specifically for those documents requested by Defendant for the first time during the more than two years this lawsuit has been pending.

3. Defendant's Requests are Untimely

As indicated, Defendant conducted its discovery in the last two weeks of January 2006 before the expiration of the January 31, 2006 discovery deadline. Without ever having requested that that deadline be extended, Defendant now asks this Court to compel production of 53 separate categories of documents which were requested for the first time three (3) months after the discovery

deadline pursuant to Defendant's "informal discovery request"[7] -- most of which are within Defendant's possession, only some of which constitute the "follow-up" documents that Caddell agreed to produce and which it will produce if such documents even exist and the rest of which are irrelevant (A. 44-47).

In fact, as incredible as it seems, Defendant blames Caddell for Defendant's failure to timely conduct discovery even though Defendant admits it did not even retain its expert witnesses until February 2006 after the discovery deadline expired when Defendant knew the identity and the anticipated substance of Caddell's expert witnesses six months earlier.

In fact, Defendant's only argument that its request is not untimely is that the trial of this cause is not scheduled until March 2007 (Doc. 38). Surely, that fact is not sufficient to allow Defendant to ignore the discovery deadline or its agreement with Caddell. Exhibit "I".

**CONCLUSION**

As demonstrated, the Defendant has caused its own plight by its inattention to this case and this Court should not allow Defendant to shift the blame for its inattention to Caddell. That

---

[7] Again, Defendant cites no authority for the unusual relief it seeks.

is particularly true where, as here, Caddell agrees to accommodate Defendant's reasonable requests for documents and the remaining documents Defendant seeks are in its possession and/or are irrelevant and/or are untimely made. As a result, this Court should deny Defendant's untimely and improper Motion to Compel production of documents pursuant to its "informal discovery request."

Respectfully Submitted,

CADDELL CONSTRUCTION CO., INC., PLAINTIFF

By: /s/ David W. Mockbee
David W. Mockbee
Mary Elizabeth Hall
MOCKBEE HALL & DRAKE, P.A.
Lamar Life Building, Ste 1000
317 E. Capitol Street
Jackson, MS 39201
(601) 353-0035 - Telephone
(601) 353-0045 - Facsimile
ITS ATTORNEYS

**CERTIFICATE OF SERVICE**

I, David W. Mockbee, do hereby certify that I have this day caused to be filed via the Official Electronic Document Filing System of the United States Court of Federal Claims ("CM/ECF") a true and correct copy of the above and foregoing Plaintiff's

Response to Defendant's Motion to Compel. Copies of this document will be transmitted via the Court's CM/ECF System to all counsel of record. Additional copies may be obtained through the Court's CM/ECF System.

Dated: May 31, 2006

/s/ David W. Mockbee
David W. Mockbee

F:\docs\HALLL\PLD\4460035 Plf Resp to Mot Compel.wpd