CONSTRUCTION MEDIATION SERVICES, INC.
Mediation As An Alternative To Litigation

June 24, 1999

Ms. Barbara J. Irvin, Branch Manager
Defense Contract Audit Agency (DCAA)
P.O. Box 1244
Pascagoula, Mississippi 39568

Re: VA Audit Control Number 8PE-N02-007
Prime Contract No. V101BC0133, Project 614-011

Subcontractor: Steel Service Corporation
Letter Dated: May 19, 1999

Dear Ms. Irvin,

I am answering to your letter offering Steel Service the opportunity to respond to the draft audit report provided. Steel Service is appreciative of this opportunity.

Steel Service's response is as follows:

1. **Unabsorbed Overhead**

DCAA has erred in calculating unabsorbed overhead based solely upon the Eichelay formula for three reasons.

1. The Eichelay formula does not properly apply to a manufacturing plant, which includes fixed, direct plant cost as a part of "overhead".

Although the Federal Circuit in Wickham Contracting Co., Inc. V. Fischer, 12 F. 3d 1574, 1580-81 (Fed. Cir. 1994), stated that "the Eichleay formula is the exclusive means for compensating a contractor for unabsorbed overhead when it otherwise meets the Eichleay prerequisites", Wickham, like other recent Federal Circuit decisions discussing the Eichleay formula, see. e.g., Interstate General Government Contractors, Inc. v. West, 12 F. 3d 1053 (Fed Cir. 1993); Daly Construction, Inc. v. Garrett, 5 F. 3d 520 (Fed. Cir. 1993); C.B.C. Enterprises, Inc. v. United States, 978 F. 2d 669 (Fed. Cir. 1992), involved delayed performance of construction contracts. Thus, the holding in Wickham does not apply here, where the delay in performance involves a manufacturing contract.

In fact, the ASBCA has expressly limited application of Eichleay to construction contracts, holding that:

EXHIBIT
F

> Whereas the practice before this board has been to apply this (Eichleay) formula in construction cases where the Government delay precluded a contractor from taking other jobs to absorb the overhead, we have used different formulas in the case of manufacturing contracts.

Do-Well Machine Shop, Inc., ASBCA Nos. 35867, 35922, 92-2 BCA ¶24,843, at 123,959 (citing The Entwistle Company, ASBCA No. 14918, 75-2 BCA ¶11,420, aff'd and modified on recons. 76-2 BCA ¶12,108; Therm-Air Manufacturing Co., Inc., ASBCA No. 14918, 73-1 BCA ¶9983; Allegheny Sportswear Co., ASBCA No. 4163, 58-1 BCA ¶1684). Emphasis added).

Additionally, in So-Pak-Co., ASBCA No. 38906, 93-3 BCA ¶26,215, the Board allowed a meat packing contractor to use the Eichleay formula but recognized that "(application of an 'Eichleay formula' recovery of unabsorbed overhead and G&A costs to a manufacturing contract, ... is rare..." Id: at 130,471.

In short, the Federal Circuit, unlike the ASBCA, has not had the occasion to distinguish between construction contracts and non-construction contracts for purposes of applying the Eichleay formula. Clearly, given such an occasion, the Federal Circuit would agree with the ASBCA that, although Eichleay can be applied to non-construction contracts, it is not and should not be the "exclusive means" for compensating manufacturing contractors for unabsorbed overhead. See, Kauffman and Holman, The Eichleay Formula: A Resilient Means For Recovering Unabsorbed Overhead, Public Contract Law Journal, Vol. 24, No. 2 (Winter 1995), at 335.

2. If Eichelay is to be used, then SSC's unabsorbed overhead claim must be calculated as two separate claims.

   a. Plant Fixed Cost Overhead, which would be the same as direct job overhead in the construction context; and

   b. Home Office Overhead (G&A).

   In fact, in originally submitting its claim, SSC enumerated both the direct overhead and G&A elements of its unabsorbed overhead

claim at Section X, pp. X-13 through X-15. DCAA has only considered the G&A portion of SSC's unabsorbed overhead claim in its draft response.

3. The Eichelay formula alone does not fairly compensate SSC in this instance where SSC had reserved its plant for the work as originally scheduled but has had to endure not one but two subsequent delays. Given the lost opportunity to obtain replacement work during two, not just one, delay periods, the Eichleay formula alone cannot fairly compensate SSC for the unabsorbed revenue loss that could have been realized if SSC had had the plant hours to sell during the two delay periods.

Also, DCAA is attempting to unfairly allocate a large portion of overhead to Steel Service's engineering and Service center departments. Steel Service's business is fabrication of steel. All departments' efforts are designed to benefit or create a competitive advantage for fabrication. SSC recognizes this fact on its audited financial statements. SSC, in spite of this, has provided a fair basis of allocation for other than internal use. The allocation is provided as attachment 1.

SSC disagrees with DCAA's position that SSC has not given credit for any replacement work obtained. SSC allocated a prorata amount to actual hours as compared to actual hours had the delay not occurred. All other projects received full consideration for work accomplished.

In regard to DCAA's comments regarding the shop master schedule. SSC uses the shop schedule for two purposes. One purpose is to predict when SSC is in need of work. This is a future use of the schedule. Estimating goes after certain projects that will best fit its need. Normally this is a minimum of several months in the future. Determining need is more than just simple man-hours. When the VA project was bid and SSC was notified it was the low bidder estimating assumed that time frame SSC now had a full shop and needed no further work. The shop use of the schedule is more of a near term need. Projects are inserted in the schedule by the shop once the project is turned over to the shop superintendent. This project was not immediately turned over to the shop because of the engineering problems discovered during the first week.

**Direct Payment to EEE Detailing**

SSC paid EEE Detailing $283,007 more than the original issued purchase order. DCAA acknowledges the correctness of these amounts (page 9 note c) yet questions $119,612 on page 4. SSC simply does not understand why the amount is questioned.

**EEE Detailing**

DCAA questioned $35,646 based on changing the contract provisions between SSC and EEE. SSC does not understand. It is a necessary part of steel detailing to negotiate revision rates and include them as part of the contract. The rates included overhead and profit. The rates are reasonable, were paid, and no revision by DCAA is necessary or warranted.

DCAA questioned $36,390 of efficiency losses. SSC believes the cost should be more appropriately shifted to a category of unresolved since DCAA received no technical support. It is SSC's belief a person familiar with detailing would concur a 15% loss of efficiency is reasonable.

**William & Beasley**

SSC agrees that William & Beasley's claim must be reviewed by a technical person.

**Increased Overhead Rates**

SSC bid this project at an anticipated bid recovery rate of 200%. SSC's bid was correct. As shown in the below calculation, had the project gone as bid the recovery rate would have been 200%.

| Monthly Burden | Months (May-Nov 1996) | | | | Rate @ 200% |
|---|---|---|---|---|---|
| $297,218.42 | 7 | $2,080,528.94 / 107,336.00 Hours | | | |
| | Hour Burden | $ | 19.38 | 200% | Pay Rate $9.69 |

SSC changed its bid rate from 200% used for this project to 235% for projects that would be performed in the time span that actual performance of this project took place.

DCAA, on page 17, clearly shows that if adjustment is made for the delay then an actual increase occurred. SSC does not understand based on the undisputed facts why this increase is being questioned.

**Subletting**

SSC had two proposals affecting subletting outstanding. The Section Nine Proposal has now been settled.

SSC as a result of delays was forced to subcontract to Williams Steel. SSC claimed in its Section Nine Proposal that it lost Williams due to the impact of schedule nine. SSC has now been paid the difference between the cost if Williams had performed versus actual. The remaining cost is the difference between the cost that would have occurred had Williams performed versus the cost had SSC performed.

The cost is as follows:

| | | | |
|---|---|---|---|
| Williams P.O. | $570 ton | 889 tons = | $506,730.00 |
| Shipping cost | $41.56 ton | 889 tons = | 36,946.84 |
| Total | | | $543,676.84 |
| Add sales tax | | @8.25% | 44,853.39 |
| Total | | | $588,530.23 |
| Less: SSC cost | 13.1 man-hours ton | | |
| | X 889 tons = | 11,645.9 hours | |
| | | X $9.90 hour | |
| | | $115,294.41 | |
| | *Overhead @200% = | 230,588.82 | $345,883.23 |
| | **Total** | | **$242,647.00** |

* SSC does not agree that it should have paid some other companies fixed overhead as the above would allow.

** The Williams P.O. is attached in case DCAA did not obtain a copy.

**Efficiency Losses This Project**

SSC acknowledges that its efficiency loss calculation was prepared on the basis of a modified total cost. The hours and data were obtained directly from the accounting system. However, since the problems encountered by SSC were prevalent from the beginning, a measured mile format could not be developed. In lieu of the measured mile, SSC examined its estimate based on what it encountered versus anticipated. SSC provided to DCAA what management believes were bid adjustments based on technique differences that would have been necessary regardless of defective plans.

SSC is of the belief that since DCAA did not have the technical assistance needed to evaluate the efficiency, then the differences should be more appropriately shown as "unresolved".

**SSC Efficiency Loss Other Projects**

SSC provided historical data on other projects in an effort to demonstrate losses of efficiency. SSC concurs that management judgement was used to determine efficiency losses.

SSC estimated that of the losses incurred only 50% were as a result of the problems created by the VA project. DCAA appears to confirm this estimate in the calculations provided.

SSC also recognizes that technical assistance is required to assist DCAA in evaluating this claim. Since DCAA did not have technical assistance available to it. SSC believes this element should be more appropriately classified as "unresolved".

**Bond Cost**

DCAA misunderstands the criteria for calculating bond premium. Bond premium is set by the bonding company based on revenue. The rates decrease as the contract amount increases. The Veterans Administration is perfectly aware of the rates.

**AMW**

DCAA was misinformed concerning the availability of man-hour data by project. It was CMS's understanding that the man-hour data was not available for 1996, but was available for subsequent years. CMS has discovered that the man-hour data for 1996, 1997 & 1998 is available and is provided by attachment.

The shop scheduling man-hours is not available. AMW does provide long range schedules, but abandons them to a manual system on a near term basis. AMW post near term projects on a board that is constantly updated. No hard copy ever existed of this scheduling data.

SSC does not understand why the amounts calculated under the Eichelay formula by DCAA is questioned. It would seem that the difference between the Eichelay formula and the alternate formula with or without the man-hour data should be the questioned amount.

Yours truly,

L. Ray Vinson

CC: file
Attachments
LRV:F/MSWord/Mydocs/314DCAAsupp(614DCA~1)

Attachment 1

| General & Administration | | | | | |
|---|---|---|---|---|---|
| Account | | 1996 | 1997 | | |
| Number | Description | Overheads | Overheads | | |
| 5520 | Misc | | $ 6,522.82 | | |
| 5522 | Dep. | | 1,799.00 | | |
| 5525A | interest | | | | |
| 5600 | Salary | | 114,093.82 | | |
| 5650 | Payroll Taxes | | 6,532.98 | | |
| 5700 | Travel | | 11,374.81 | | |
| 5710a | Meals & Enter | | | | |
| 5800 | Utilities &Tel | | 1,693.15 | | |
| 5900 | Repairs & Maint. | | 225.56 | | |
| 6001a | Bad Debts | | - | | |
| 6020a | Contributions | | | | |
| 6030 | Depreciation | 199,798.00 | 230,739.00 | | |
| 6031 | Depreciation Exp - Office | - | 64,236.79 | | |
| 6035 | Software | - | - | | |
| 6040 | Hardware | - | - | | |
| 6045 | Lease | - | - | | |
| 6050 | Paper & Supplies | - | | | |
| 6055 | Postage/Shipping | - | - | | |
| 6095 | Dues & Fees | 13,578.50 | 9,657.92 | | |
| 6110 | Insurance | 316,828.68 | 129,624.34 | | |
| 6111 | Group Insurance | 180,876.34 | 163,854.39 | | |
| 6112 | 401 K | 13,164.83 | 14,679.04 | | |
| 6120a | Interest Expense | | | | |
| 6121 | Interest Income | | | | |
| 6122 | Discounts Earned | | | | |
| 6130 | Supplies | 552,011.52 | 355,017.07 | | |
| 6150 | Professional Fees | 55,438.38 | 64,320.02 | | |
| 6155 | Rent | 2,490.00 | - | | |
| 6158 | Salary- Sick | 27,991.84 | 29,471.28 | | |
| 6159 | Salary-Vacation | 36,703.52 | 38,118.00 | | |
| 6160 | Salary Expense | 1,438,663.44 | 1,407,782.93 | | |
| 6161 | Salary-Unallocated | 603,623.65 | 652,299.74 | | |
| 6162 | Salary Maintenance | - | 73,918.59 | | |
| 6164 | Salary Management | - | 163,400.35 | | |
| 6165 | Retirement Plan | 68,484.00 | 28,086.00 | | |
| 6170 | Taxes | 128,614.45 | 153,462.77 | | |
| 6171 | Payroll Taxes | 264,549.80 | 341,119.43 | | |
| 6180 | Travel Expense | 112,077.16 | 104,657.86 | | |
| 6181a | Meals & Entertainment | | | | |
| 6190 | Utilities & Telephone | 225,965.26 | 214,261.62 | | |
| 6200 | Repairs & Maint. | 33,856.39 | 28,133.62 | | |
| 6210 | Vehicle Operating Exp | 71,907.33 | 39,430.07 | | |
| 6220 | Shop Supplies | 860,980.72 | 732,034.70 | | |
| 6222a | Reserve for loss jobs | | - | | |
| 6223a | Reserve for loss jobs-PY | | | | |
| | | $ 5,207,603.81 | $ 5,180,547.67 | | |
| Adjustments | | | | | |
| | Use of Capital | $ 276,260.00 | $ 304,506.12 | | |
| | Supplies | (513,942.07) | (424,291.55) | | |
| | Bonus distribution | 250,000.00 | | | |
| | Engineering | (503,706.50) | (672,503.66) | | |
| | Shot Blast | (21,674.40) | (29,673.60) | | |
| | Printing | | (2,893.64) | | |
| | Payroll Taxes &Burdens | (376,517.23) | (349,162.59) | | |
| | Engineering burden: | | | | |
| | 1996 $177,691 X 15.87% | 28,199.56 | | | |
| | 1997 $271,797 X 15.10% | | 41,041.35 | | |
| | Code 2 adjust | (779,602.13) | (730,460.87) | Based on tonnage | |
| | | $ 3,566,621.04 | $ 3,317,109.23 | | |
| | | | | | |
| | MonthlyAverage | $ 297,218.42 | $ 276,425.77 | | |

**Allocation of Service Center O/H**

| | 1996 | 1997 |
|---|---|---|
| Materials Outside | $ 2,902,422.18 | $ 3,496,508.23 |
| Materials Inside | 1,108,875.61 | 1,466,992.18 |
| | $ 4,011,297.79 | $ 4,963,500.41 |

**Ratio**

| | | |
|---|---|---|
| Materials Inside | $ 1,108,875.61 | $ 1,466,992.18 |
| Total Materials | $ 4,011,297.79 | $ 4,963,500.41 |
| % to Inside | 27.64% | 29.56% |

**Code 2 Overheads**

| | | |
|---|---|---|
| 6030-2 Depreciation | 32,777.80 | 43,562.00 |
| 6095-2 Dues & Fees | 2,850.72 | 1,907.87 |
| 6110-2 Insurance | 57,669.86 | 24,635.93 |
| 6111-2 Group Insurance | 31,180.13 | 31,090.84 |
| 6112-2 401 K | 2,847.20 | 2,692.65 |
| 6130-2 Supplies | 108,536.89 | 80,450.70 |
| 6150-2 Professional Fee | 12,733.86 | 15,041.07 |
| 6158-2 Salary- Sick | 5,161.52 | 5,212.90 |
| 6159-2 Salary-Vacation | 5,039.20 | 7,710.14 |
| 6160-2 Salary Expense | 350,974.12 | 330,192.20 |
| 6161-2 Salary-Unallocat | 99,844.32 | 94,926.42 |
| 6162-2 Salary Maintena | - | 17,740.46 |
| 6164-2 Salary Managem | - | 43,782.30 |
| 6170-2 Taxes | 31,152.18 | 29,562.41 |
| 6171-2 Payroll Taxes | 53,810.56 | 69,622.60 |
| 6180-2 Travel Expense | 11,008.86 | 14,032.07 |
| 6190-2 Utilities & Teleph | 46,249.03 | 44,844.47 |
| 6200-2 Repairs & Maint. | 23,601.99 | 18,421.96 |
| 6210-2 Vehicle Operatin | 64,111.63 | 32,713.06 |
| 6220-2 Shop Supplies | 137,900.66 | 128,790.39 |
| | $1,077,450.53 | $1,036,932.44 |
| X | 27.64% | 29.56% |
| Allocable to SSC | $297,848.40 | $306,471.57 |

| | | | |
|---|---|---|---|
| Adjustment to O/H | | $779,602.13 | $730,460.87 |
| Less: Burden % | | | |
| Direct Labor Code 2 | | | |
| Code 5002-2 1996 | $ 404,567.64 | | |
| Burden X | 15.87% | | |
| | $ 64,204.88 | (64,204.88) | |
| Code 5002-2 1997 | $485,809.79 | | |
| Code 5007-2 | 36,133.43 | | |
| | $521,943.22 | | |
| Burden X | 15.10% | | |
| | $78,813.43 | | (78,813.43) |
| | | $715,397.25 | $651,647.44 |

614code2adj

| | | | | |
|---|---|---|---|---|
| Labor Burdens all | | | | |
| | | | | |
| Total Labor 1996 | | | 1997 | |
| code 5002-1 | $1,324,652.59 | | $1,519,242.71 | |
| code 5002-2 | $404,567.64 | | $485,809.79 | |
| Code 5007 | | | $36,133.43 | |
| Code 5004 | $1,408,167.06 | $3,137,387.29 | $271,797.37 | $2,312,983.30 |
| Code5600 | | | $114,093.82 | |
| Code 6158 | 27,991.84 | | 29,471.28 | |
| Code 6159 | 36,703.52 | | 38,118.00 | |
| Code 6160 | 1,438,663.44 | | 1,407,782.93 | |
| Code 6161 | 603,623.65 | | 652,299.74 | |
| Code 6162 | | | 73,918.59 | |
| Code 6164 | | | 163,400.35 | |
| | $5,244,369.74 | | $4,792,068.01 | |
| | | | | |
| Total Direct | $3,137,387.29 | | $2,312,983.30 | |
| Total Direct | $5,244,369.74 | | $4,792,068.01 | |
| % Direct | 59.82% | | 48.27% | |
| | | | | |
| Burdens | | | | |
| Code6158 | $ 27,991.84 | | $ 29,471.28 | |
| Code 6159 | 36,703.52 | | 38,118.00 | |
| Code 6110 | 316,828.68 | | 129,624.34 | |
| Code6112 | 13,164.83 | | 14,679.04 | |
| Code 6171 | 53,810.56 | | 341,119.43 | |
| Code 6111 | 180,876.34 | | 163,854.39 | |
| Code5650 | | | 6,532.98 | |
| | $ 629,375.77 | | $ 723,399.46 | |
| | 59.82% | | 48.27% | |
| Direct Cost portion | $376,517.23 | | $349,162.59 | |
| | | | | |
| Bueden Rate | | | | |
| | | | | |
| Total Burden | $ 629,375.77 | | $ 723,399.46 | |
| Total Labor | $5,244,369.74 | 12.00% | $4,792,068.01 | 15.10% |

6114acct 1996-1997

| Year | 1996 Engineering | | | 1997 | | |
|---|---|---|---|---|---|---|
| Period | Salary Exp | O/S Eng | Overhead | Salary Exp | O/S Eng | Overhead |
| 1 | $ 16,231.48 | $ 108,667.41 | $ 29,916.35 | $ 11,162.24 | $ 147,930.50 | $ 20,282.44 |
| 2 | 11,676.22 | 41,903.64 | 20,940.23 | 20,996.24 | 32,531.50 | 35,804.26 |
| 3 | 16,059.06 | 25,962.07 | 28,596.82 | 24,687.76 | 11,650.32 | 38,776.57 |
| 4 | 12,663.55 | 30,770.25 | 22,447.74 | 24,787.44 | 32,411.74 | 39,717.57 |
| 5 | 14,853.14 | 41,986.75 | 25,770.58 | 24,742.68 | 21,813.08 | 41,763.59 |
| 6 | 16,450.42 | 34,165.00 | 29,575.11 | 23,487.21 | 52,574.03 | 37,718.52 |
| 7 | 17,909.24 | 106,820.25 | 31,486.85 | 26,761.88 | 42,475.03 | 43,682.40 |
| 8 | 16,513.61 | 145,550.35 | 29,257.75 | 22,207.39 | 64,201.79 | 34,271.54 |
| 9 | 14,601.03 | 44,337.00 | 25,945.24 | 23,333.08 | 15,751.67 | 33,846.65 |
| 10 | 22,073.89 | 207,113.50 | 36,959.83 | 29,444.66 | 78,326.44 | 43,693.93 |
| 11 | 12,278.63 | 128,720.64 | 20,310.74 | 21,774.84 | 64,108.19 | 32,015.02 |
| 12 | 6,454.28 | 2,495.50 | 10,776.25 | 18,411.95 | 39,306.69 | 21,719.42 |
| 12 | (73.34) | | | | | |
| | $ 177,691.21 | $ 918,492.36 | $ 311,983.49 | $ 271,797.37 | $ 603,080.98 | $ 423,291.91 |
| | | | $ 1,408,167.06 | | | $ 1,298,170.26 |
| | $ 489,674.70 | | | | | |
| | | | | $ 695,089.28 | | |

614eng19961997

PURCHASE OI ER 628

ATTACHMENT 2

**STEEL SERVICE CORPORATION**

2260 FLOWOOD DRIVE
P.O. BOX 1144 • JACKSON, MS 39215-1144
601-939-9222 • FAX 601-939-9359

Purchase Order : 54359

DATE: 07/11/97

TO: Williams Steel
315 Lake Street
Jackson TN 38301-
Attn : Charles Campbell

SHIP VIA: YOUR TRUCK

DATE REQUIRED: / /

TERMS: NET 30

SHIP TO: Steel Service Corporation
2260 Flowood Drive
Jackson, MS 39208

F.O.B.: JOBSITE

RE: 997-74

PAGE:

| QUANTITY | | STOCK NUMBER / DESCRIPTION | | | | | AMOUNT |
|---|---|---|---|---|---|---|---|
| Line No | Qty | Item Description | Project Number | Ext Met | Unit Price | Unit Freight | |
| 1 | 1 | SEE ATTACHED FOR PRICING SCHEDULE AND SCOPE OF WORK | 997 | EAC | 0.00 | 0.00 | 0.00 |
| | | | | | PO Totals | | 0.00 |
| | | | | | Page Total | | 0.00 |

Contract

MATERIALS MUST BE IDENTIFIED AND MARKED IN ACCORDANCE WITH MINIMUM APPROPRIATE ASTM REQUIREMENTS. MATERIAL TEST REPORTS OR MILL CERTIFICATES MUST ACCOMPANY MATERIAL OR PRECEDE SHIPMENT.

IMPORTANT
OUR ORDER NUMBER MUST APPEAR ON INVOICES, PACKAGES AND CORRESPONDENCE. ACKNOWLEDGE IF UNABLE TO DELIVER BY DATE REQUIRED.

AUTHORIZED BY: Harold A. Parmenter

628

# ATTACHMENT 1

July 11, 1997

P.O. #54369

To: Williams Steel
315 Lake Street
Jackson, TN 38301
Attn: Charles Camp

From: Steel Service Corporation
P.O. Box 1144
Jackson, MS 39215
Attn: Harold Permenter

## SCOPE

Fabricate and deliver steel as listed per Steel Service Corporation (SSC) supplied drawings as listed on Enclosure #1. At site delivery dates are as shown on the same enclosure. SSC will supply all material except for consumables and dunnage. Base plate will be cut to size. The detail material for the columns will be sent to you in 96" x 20'-0" plates if grade A572-50 is specified. If A572-50 is not specified, we will send in 48" x 10'-0", 60" x 10'-0", or 72" x 10'-0". All bolts and studs will be supplied by SSC. All sales tax will be by SSC. All unloading at jobsite will be by SSC. All beveling of material will be Williams Steel. Fabrication will be in accordance with project specifications, AISC, and SSC shop drawings. Shipment will be by sequence. In sequences with multiple loads their delivery must be per Steve Holland's directive or loads will be refused and require reshipment at no cost to SSC.

## INVOICING

Invoicing will be based on steel received at site. Progress payments will be net 30 from receipt of invoice, with a 5% retainer for 60 days after final invoice. Invoices must be accompanied by signed weighed shipping tickets. Two (2) copies will be sent on all invoicing. Shipping will be coordinated per SSC's field representative, Steve Holland, at site.

## QUALITY CONTROL

Periodic inspection will occur by both SSC and the Owner's representatives. Williams will notify SSC 72 hours in advance of the need for inspection or UT. Williams will provide AISC certification, QC manual, and welder's certifications for approval within 24 hours of receipt of purchase order. All material must be inspected by Owner prior to shipment. All full penetration welds must be UT'd. A copy of the cutting tickets will be supplied at the end of the project for material certification traceabillity. Bevel tolerance for weld root gap must be adhered to explicitly. The Owner is rejecting any gaps greater than 1/8" on beam flange to column plate.

628

# ATTACHMENT 1

## POINTS OF CONTACT

Ernie Hopkins / Project Manager / 601-939-9222 Ext. 210

John Oxley / Purchasing Manager / 601-939-9222 Ext. 226

Steve Holland / Field Representative / 901-578-8873

## JOBSITE SHIPPING ADDRESS

Williams & Beasley
136 North Pauline Street
Memphis, Tennessee 38105
901-578-5232 Telephone
901-578-5244 Fax

## PRICE

$570.00 per ton based on AISC shipping weights.

| Williams Steel | Steel Service Corporation |
|---|---|
| Charles Campbell | Harold Permenter |
| Title | Vice President of Construction<br>Title |

# P.O. # 54369
# ENCLOSURE 1

| | SEQUENCE | | DELIVERY DATE | | DRAWING NO. | |
|---|---|---|---|---|---|---|
| | 1 | | 7/30/97 | | 1621 | |
| | 1 | | 7/30/97 | | 1622 | |
| | 1 | | 7/30/97 | | 1623 | |
| | 2 | | 8/6/97 | | 1826 | |
| | 2 | | 8/6/97 | | 1827 | |
| | 2 | | 8/6/97 | | 1828 | |
| | 3 | | 8/13/97 | | 1441 | |
| | 3 | | 8/13/97 | | 1442 | |
| | 3 | | 8/13/97 | | 1443 | |
| | 3 | | 8/13/97 | | 1444 | |
| | 3 | | 8/13/97 | | 1445 | |
| | 3 | | 8/13/97 | | 1446 | |
| | 3 | | 8/13/97 | | 1447 | |
| | 3 | | 8/13/97 | | 1448 | |
| | 4 | | 8/20/97 | | 644 | |
| | 4 | | 8/20/97 | | 645 | |
| | 4 | | 8/20/97 | | 646 | |
| | 4 | | 8/20/97 | | 647 | |
| | 4 | | 8/20/97 | | 648 | |
| | 4 | | 8/20/97 | | 649 | |
| | 4 | | 8/20/97 | | 650 | |
| | 4 | | 8/20/97 | | 651 | |
| | 4 | | 8/20/97 | | 652 | |
| | 5 | | 8/27/97 | | 2708 | |
| | 5 | | 8/27/97 | | 2709 | |
| | 5 | | 8/27/97 | | 2710 | |
| | 5 | | 8/27/97 | | 2711 | |
| | 5 | | 8/27/97 | | 2712 | |
| | 5 | | 8/27/97 | | 2713 | |
| | 5 | | 8/27/97 | | 2714 | |
| | 5 | | 8/27/97 | | 2715 | |
| | 5 | | 8/27/97 | | 2716 | |
| | 5 | | 8/27/97 | | 2717 | |
| | 5 | | 8/27/97 | | 2720 | |
| | 5 | | 8/27/97 | | 2721 | |
| | 5 | | 8/27/97 | | 2722 | |
| | 5 | | 8/27/97 | | 2723 | |
| | 5 | | 8/27/97 | | 2724 | |
| | 5 | | 8/27/97 | | 2728 | |
| | 5 | | 8/27/97 | | 2729 | |
| | 5 | | 8/27/97 | | 2730 | |
| | 5 | | 8/27/97 | | 2731 | |
| | 5 | | 8/27/97 | | 2732 | |

# P.O. # 54369
# ENCLOSURE 1

| | SEQUENCE | | DELIVERY DATE | | DRAWING NO. | |
|---|---|---|---|---|---|---|
| | 6 | | 9/3/97 | | 1129 | |
| | 6 | | 9/3/97 | | 1130 | |
| | 6 | | 9/3/97 | | 1131 | |
| | 6 | | 9/3/97 | | 1132 | |
| | 6 | | 9/3/97 | | 1133 | |
| | 6 | | 9/3/97 | | 1134 | |
| | 6 | | 9/3/97 | | 1135 | |
| | 6 | | 9/3/97 | | 1136 | |
| | 6 | | 9/3/97 | | 1137 | |
| | 7 | | 9/10/97 | | 1531 | |
| | 7 | | 9/10/97 | | 1532 | |
| | 7 | | 9/10/97 | | 1533 | |
| | 7 | | 9/10/97 | | 1534 | |
| | 7 | | 9/10/97 | | 1535 | |
| | 7 | | 9/10/97 | | 1536 | |
| | 7 | | 9/10/97 | | 1537 | |
| | 7 | | 9/10/97 | | 1538 | |
| | 8 | | 9/17/97 | | 1330 | |
| | 8 | | 9/17/97 | | 1331 | |
| | 8 | | 9/17/97 | | 1332 | |
| | 8 | | 9/17/97 | | 1333 | |
| | 8 | | 9/17/97 | | 1334 | |
| | 8 | | 9/17/97 | | 1335 | |
| | 8 | | 9/17/97 | | 1336 | |
| | 8 | | 9/17/97 | | 1337 | |
| | 9 | | 9/24/97 | | 1732 | |
| | 9 | | 9/24/97 | | 1733 | |
| | 9 | | 9/24/97 | | 1734 | |
| | 9 | | 9/24/97 | | 1735 | |
| | 9 | | 9/24/97 | | 1736 | |
| | 9 | | 9/24/97 | | 1737 | |

AMW

Attachment 3

1996

| Job # | Jan-96 | Feb-96 | Mar-96 | Apr-96 | May-96 | Jun-96 | Jul-96 | Aug-96 | Sep-96 | Oct-96 | Nov-96 | Dec-96 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 56 | 484 | 502 | 427 | 399 | 945 | 365 | 206 | 164 | 342 | 221 | 200 | 202 |
| 351 | 8 | 11 | | | | | | | | | | |
| 376 | 8 | | | | | | | | | | | |
| 390 | 16 | 66 | 72 | | 271 | 194 | 21 | 11 | 5 | 6 | | |
| 410 | 1250 | 66 | 303 | 25 | | 2 | | | | | | |
| 423 | 19 | | | | | | | | | | | |
| 426 | | 4 | | | | | | | | | | |
| 429 | 178 | 380 | 212 | 390 | 23 | 13 | 28 | 35 | 24 | 0 | 21 | 14 |
| 430 | | | | 15 | | 28 | | | | | | |
| 433 | | 19 | | | | | | | | | | |
| 459 | 5 | | | 2 | | | | 3 | | 4 | | |
| 461 | 276 | 72 | | | | | | | | | | |
| 463 | | | 279 | 159 | 9 | | | | | | | |
| 467 | 313 | 188 | 9 | 15 | 319 | 2 | 1 | 32 | | | | |
| 469 | | 2 | 12 | 9 | 33 | | | | | | | |
| 472 | 17 | | | | | | | | | | | |
| 476 | 187 | 303 | 1088 | 1346 | 468 | 370 | 137 | 973 | 477 | 858 | 1179 | 168 |
| 477 | | | | | 12 | | | | | | | |
| 478 | 89 | 20 | 7 | | | | | | | | | |
| 483 | | | | | 15 | | | | | | | |
| 485 | 810 | 1057 | 72 | | | | | 6 | | | | |
| 488 | | | | | 78 | 828 | 138 | 5 | | | | |
| 489 | 5 | 9 | | 2 | 4 | 4 | | 3 | 0 | 3 | 3 | |
| 492 | 9 | 7 | 116 | 3 | 7 | | | | | | | |
| 495 | | 344 | 290 | 3 | 6 | | | | | | | |
| 496 | | 670 | 1557 | 1051 | 579 | 4 | 1 | | | | | |
| 499 | 4 | 2 | | | | | | | | | | |
| 502 | | | | | | | | | | | 3 | 47 |
| 503 | | | | | 158 | | | | | | | |
| 505 | | | | 116 | 31 | | | | | | | |
| 506 | | | | | | 35 | 64 | 820 | 367 | 223 | 1047 | 658 |
| 507 | | | | | 152 | | | | | | | |
| 508 | | | | | 5 | 10 | 660 | 12 | | | | |
| 509 | | | | | 56 | | | | | | | |
| 510 | | | | | 27 | 123 | 689 | 90 | 12 | 41 | 11 | 6 |
| 511 | | | | | 43 | 90 | | | | | | |
| 513 | | | | | | 288 | 61 | | | | | |
| 514 | | | | | | 9 | 367 | 59 | 6 | | | |
| 516 | | | | | | | 22 | 63 | | | | |
| 518 | | | | | | 8 | 70 | 225 | | | | |
| 519 | | | | | | | 118 | 68 | | | | |
| 520 | | | | | | | | | | | 358 | |
| 522 | | | | | | | 3 | | | | | |
| 523 | | | | | | | | | | | | 407 |
| 525 | | | | | | | | 28 | | | | |
| 526 | | | | | | | | 347 | 1458 | 1026 | 18 | 6 |
| 527 | | | | | | | | 4 | | | | |
| 528 | | | | | | | | | 16 | | | |
| 529 | | | | | | | | 77 | 430 | 653 | 366 | |
| 531 | | | | | | | | | | | 57 | 137 |

614amw1996

Amw 1996

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 532 | | | | | | | | | 1 | 177 | 222 | 23 |
| 533 | | | | | | | | | 8 | 6 | 13 | |
| 535 | | | | | | | | | 2 | | | |
| 526 | | | | | | | | | 83 | 4 | | |
| 537 | | | | | | | | | | | 777 | 154 |
| 542 | | | | | | | | | | 28 | 158 | |
| 543 | | | | | | | | | | 1 | | |
| 545 | | | | | | | | | | 79 | 36 | |
| 546 | | | | | | | | | | 2 | | |
| 547 | | | | | | | | | | | | 230 |
| 551 | | | | | | | | | | | 53 | 73 |
| 553 | | | | | | | | | | | 28 | |
| 554 | | | | | | | | | | | 27 | 4 |
| 556 | | | | | | | | | | | 19 | 1 |
| 558 | | | | | | | | | | | | 200 |
| 559 | | | | | | | | | | | | 124 |
| 562 | | | | | | | | | | | | 129 |
| | 3675 | 3719 | 4443 | 3533 | 3241 | 2370 | 2583 | 3021 | 3232 | 3332 | 4598 | 2580 |
| | | | | | | | | | | | | |

Amw 1997

| Job # | Jan-97 | Feb-97 | Mar-97 | Apr-97 | May-97 | Jun-97 | Jul-97 | Aug-97 | Sep-97 | Oct-97 | Nov-97 | Dec-97 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 56 | 923 | 175 | 297 | 523 | 1299 | 506 | 570 | 411 | 511 | 310 | 500 | 230 |
| 429 | 98 | 18 | | | | | | | | | | |
| 476 | 12 | | | 35 | 26 | 36 | 62 | 8 | | | 2 | 1 |
| 502 | 34 | 0 | 348 | 140 | 265 | 260 | 630 | 451 | 239 | 20 | 1 | 0 |
| 506 | 20 | | | | | | | | | | | |
| 508 | 0 | | | | | | | | 8 | | | |
| 510 | 87 | 13 | 40 | | | | | 2 | | | | |
| 523 | 0 | 7 | 450 | 68 | 88 | 25 | | | | | | |
| 531 | 0 | 400 | 173 | 41 | | | | | | 16 | | |
| 537 | 0 | 8 | | | | | | | | | | |
| 539 | | | 29 | 48 | | | | | | | | |
| 547 | 10 | | | | | | | | | | | |
| 558 | 1005 | 1179 | | 9 | | | | | | | | |
| 559 | 24 | | | | | | | | | | | |
| 561 | 640 | 1324 | 623 | 19 | 1 | | | | | | | |
| 562 | 48 | | | | | | | | | | | |
| 563 | 660 | | | | | | | | | | | |
| 564 | 58 | | | | | | | | | | | |
| 566 | | 10 | 82 | 10 | | | 110 | 41 | | | | |
| 567 | 84 | | | | | | | | | | | |
| 568 | 67 | | | | | | | | | | | |
| 569 | | | 247 | 410 | 140 | | | 1 | 29 | | | |
| 570 | 23 | | | | | | | | | | | |
| 571 | 39 | 189 | | | | | | | | | | |
| 572 | 4 | | | | | | | | | | | |
| 573 | | | | 36 | 594 | 133 | 42 | 35 | 262 | 459 | 855 | 54 |
| 575 | | 1571 | 1007 | | | | | | | | | |
| 576 | | 104 | | | | | | | | | | |
| 577 | | | 145 | 298 | | | | | | | | |
| 578 | | | 58 | | | | | | | | | |
| 579 | | | 3 | | | | 12 | 2 | 0 | 372 | 593 | 928 |
| 580 | | | | 379 | 1154 | 87 | | | | | | |
| 581 | | | | | 0 | 86 | 14 | | | | 1 | |
| 582 | | | | 3 | 454 | 8 | | | 10 | | | |
| 584 | | | 58 | 11 | | | | | | | | |
| 585 | | | | 1525 | 17 | | | | | | | |
| 586 | | | | 30 | | | | | | | | |
| 587 | | | | | | | | 3 | 38 | 120 | 32 | 228 |
| 588 | | | | 122 | 41 | | | | | | | |
| 589 | | | | | | 1130 | 15 | 27 | 16 | | | |
| 591 | | | | | | | 28 | 508 | 317 | 47 | | |
| 592 | | | | | | 4 | | | | | | |
| 594 | | | | | | 72 | 179 | | | | | |
| 595 | | | | | 12 | | | | | | | |
| 596 | | | | | | | | 11 | 517 | 786 | 337 | 4 |
| 598 | | | | | | | 274 | 576 | 1 | 3 | | |
| 599 | | | | | | 446 | 230 | | | | | |
| 600 | | | | | 52 | 1354 | 970 | 73 | | | | |
| 601 | | | | | | | 151 | 218 | 234 | 353 | 180 | 30 |
| 602 | | | | | | 9 | 14 | | | | | |

AMW 1997

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 603 | | | | | | | 32 | 18 | 25 | 306 | 297 | 360 |
| 604 | | | | | | 30 | | | | | | |
| 606 | | | | | | | 151 | | | | | |
| 607 | | | | | | | 338 | 48 | | | 5 | |
| 609 | | | | | | | 5 | | | | | |
| 610 | | | | | | | | 163 | 9 | | | |
| 612 | | | | | | | | | 27 | 34 | | |
| 614 | | | | | | | 13 | | 9 | | | |
| 615 | | | | | | | | 24 | 3 | 116 | 14 | |
| 618 | | | | | | | | 48 | | | | |
| 619 | | | | | | | | 113 | 17 | 69 | 289 | 196 |
| 621 | | | | | | | | | 205 | | | |
| 622 | | | | | | | | 62 | 649 | 536 | 9 | |
| 623 | | | | | | | | 154 | 861 | 1039 | 259 | |
| 624 | | | | | | | | 8 | | | | |
| 625 | | | | | | | | | | | 6 | 13 |
| 626 | | | | | | | | | | | 367 | 257 |
| 627 | | | | | | | | | | | | 2 |
| 628 | | | | | | | | | | 378 | 65 | |
| 631 | | | | | | | | | | | 27 | |
| 632 | | | | | | | | | | | 45 | 130 |
| 633 | | | | | | | | | 13 | 46 | 258 | 90 |
| 637 | | | | | | | | | | 18 | 29 | |
| 638 | | | | | | | | | | 25 | 52 | 122 |
| 639 | | | | | | | | | | 38 | 2 | |
| 640 | | | | | | | | | | 30 | 2 | |
| 646 | | | | | | | | | | | | 321 |
| 647 | | | | | | | | | | | | 351 |
| 649 | | | | | | | | | | | 135 | |
| | 3836 | 4998 | 3560 | 3707 | 4143 | 4186 | 3840 | 3005 | 4000 | 5121 | 4362 | 3317 |

Amw 1998

| Job # | Jan-98 | Feb-98 | Mar-98 | Apr-98 | May-98 | Jun-98 | Jul-98 | Aug-98 | Sep-98 | Oct-98 | Nov-98 | Dec-98 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 476 | | 43 | | | | | | | 23 | 1 | | |
| 502 | 162 | 255 | 109 | 186 | 42 | 62 | 90 | 266 | 367 | 12 | 3 | 0 |
| 523 | 25 | | | | | | | | | | | 0 |
| 531 | 51 | 53 | | | | | 5 | | | | | 0 |
| 573 | | 5 | | | | | | | | | | |
| 576 | 12 | | | | | | | | | | | |
| 579 | 134 | 1 | | 11 | | 1 | | | | | | |
| 580 | | 12 | 12 | | | | | | | | | |
| 587 | 65 | 47 | 6 | | | | | | | | | |
| 590 | | 59 | 10 | | | | | | | | | |
| 596 | 633 | 2264 | 823 | 107 | 345 | 441 | 160 | 55 | 446 | 450 | 764 | 95 |
| 601 | 11 | 19 | | | | | | | | | | |
| 603 | 906 | 58 | 155 | 295 | 1064 | 552 | 641 | 1262 | 1548 | 129 | 115 | 14 |
| 615 | 114 | 36 | 11 | 0 | 20 | | | | | | | |
| 623 | 495 | | 13 | 28 | | | | | | | | |
| 625 | | 215 | | 4 | | 2 | | | | | | |
| 626 | 167 | 161 | | | | | | | | | | |
| 627 | 86 | 26 | | | | | | | | | | |
| 628 | | | | | | | | | | | | |
| 629 | | 1061 | 300 | 52 | 6 | | | | | | | |
| 630 | | | 317 | 146 | | 11 | | | | | | |
| 633 | 201 | 43 | 16 | | | | | | | | | |
| 635 | | 57 | 1514 | 1380 | 370 | 171 | 24 | 7 | | | | |
| 637 | | | | | | | | | | | | |
| 638 | | 35 | 10 | | | | 20 | | | | 34 | 8 |
| 639 | | | 5 | | | | | | | | | |
| 640 | | | | | | | | | | | | |
| 642 | | | | 53 | | | | | 56 | 3 | | |
| 643 | | 46 | 13 | | | | | | | | | |
| 646 | 72 | 5 | | | | | | | | | | |
| 647 | 778 | 35 | | | | | | | | | | |
| 649 | | 8 | | | | | | | | | | |
| 650 | | | | | 170 | | | | | | | |
| 652 | | | | | 231 | 324 | 365 | 11 | 1 | 7 | 197 | 9 |
| 656 | 135 | | 1 | | | | | | | | | |
| 658 | 200 | 160 | 31 | | | | | | | | | |
| 660 | | | 6 | 39 | | | | | | | | |
| 663 | | | 95 | 762 | 53 | 16 | 44 | | | | | |
| 664 | | 218 | 26 | | | | | 16 | | | | |
| 665 | | 7 | 23 | | | | | | | | | |
| 666 | | 13 | 2 | | | | | | | | | |
| 667 | | | | 14 | | | | 157 | 4 | | | |
| 668 | | | | | | | | 4 | 30 | | | |
| 669 | | | | | | | | | | 2 | | |
| 670 | | | 115 | 1307 | 185 | | | | | | | |
| 672 | | | 55 | | | | | | | | | |
| 674 | | | | | 1164 | 2735 | 3865 | 2378 | 1173 | 156 | 5 | 17 |
| 675 | | | 41 | 26 | | | | | | | | |
| 676 | | | 29 | 3 | | | | | | | | |
| 677 | | | 60 | 150 | | | | | | | | |

Amw 1998

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 678 | | | | 2 | | | | | | | | |
| 679 | | | 8 | 2 | | | | | | | | |
| 680 | | | | | | | | 74 | 77 | 31 | | |
| 681 | | | | | | 130 | 300 | 20 | | | | |
| 682 | | | | 30 | | | | | | | | |
| 684 | | | | 43 | | | | | | 13 | | |
| 687 | | | | | 49 | | | | | | | |
| 688 | | | | | | | | 333 | 1249 | 1232 | 530 | 991 |
| 689 | | | | | | | | | 45 | 1004 | 25 | |
| 690 | | | | | | 2 | | | | | | |
| 691 | | | | | | | | | 23 | 116 | 8 | |
| 695 | | | | | | | | 5 | | | | |
| 698 | | | | | | | 14 | | | | | |
| 701 | | | | | | | 1 | 4 | 12 | 8 | 4 | 2 |
| 703 | | | | | | | | | 15 | 420 | 895 | 475 |
| 704 | | | | | | | 1 | | | | 932 | 1510 |
| 711 | | | | | | | | | | | 255 | 8 |
| 716 | | | | | | | | | 2 | | | |
| 717 | | | | | | | | | | 1034 | 516 | 8 |
| 722 | | | | | | | | | | 23 | 8 | 411 |
| 723 | | | | | | | | | | | | 45 |
| 732 | | | | | | | | | | | | 86 |
| 735 | | | | | | | | | | | | 10 |
| | 4247 | 4942 | 3806 | 4640 | 3699 | 4447 | 5530 | 4592 | 5071 | 4641 | 4291 | 3689 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO., INC., Plaintiff, | ) | |
| v. | ) | No. 04-461C (Judge Bohdan A. Futey) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**AFFIDAVIT OF MARY ELIZABETH HALL, ESQUIRE**

STATE OF MISSISSIPPI
COUNTY OF HINDS

I, Mary Elizabeth Hall, being duly sworn, depose and state the following:

1. I am one of the attorneys representing plaintiff, Caddell Construction Co., Inc. ("Caddell") in the referenced lawsuit and, as a result, I have personal knowledge of the facts contained herein and I am authorized to submit this Affidavit on behalf of Caddell.

2. Brian S. Smith, Esquire, as attorney for defendant, The United States of America, traveled to Jackson, Mississippi on January 23, 2006 -- two weeks before the discovery deadline in this case -- and spent approximately one-half day reviewing over twenty (20) legal-sized boxes of documents, consisting of the project files of Caddell's subcontractor, Steel Service Corporation ("Steel

**Exhibit "G"**

Service"), whose claim Caddell sponsors in this lawsuit, and the files of Steel Service's expert witness, L. Ray Vinson, who became involved on behalf of Steel Service during the Project and who prepared the Claim for Equitable Adjustment, submitted to Defendant on or about February 3, 1998.

3. During Mr. Smith's trip to Jackson, Mississippi in January 2006, he never mentioned the need for further document discovery from Caddell or Steel Service or Steel Service's subcontractors.

4. Thereafter, by e-mail dated March 15, 2006 (Exhibit "H" to Plaintiff's Response to Defendant's Motion to Compel), Mr. Smith notified the undersigned that defendant's expert witnesses wished to review Steel Service and its expert's documents and that they intended to arrive in Jackson, Mississippi, on March 24, 2006.

5. On March 24, 2006, defendant's experts arrived and reviewed Steel Service's project files and L. Ray Vinson's files. The next day, Mr. Smith arrived and mentioned for the first time the need to extend the April 14, 2006 deadline for filing defendant's expert reports until July 2006. I objected to the three-month extension. At that time, Mr. Smith and I tried to contact this Court to ascertain a possible trial date without success.

6. There was no mention to me during that trip by Mr. Smith or the defendant's experts that they had any need for any additional documents.

7. In fact, the issue of additional documents was not raised by Mr. Smith until on or about March 31, 2006, as confirmed by his March 31, 2006 e-mail to the undersigned in which he confirmed, among other things, that he would provide a "list of follow-up requests for discoverable information that was not contained in the boxes in [Caddell's/Steel Service's counsel's office]. As part of that, our financial expert will dialogue directly with DCAA to avoid obtaining identical information that was already provided to them" (Exhibit "I" to Plaintiff's Response to Defendant's Motion to Compel).

8. Other than Mr. Smith's March 31, 2006 e-mail, the undersigned recalls one telephone conversation with Mr. Smith concerning his "follow-up request" in which he assured the undersigned that any additional requests for documents would be limited to "follow-up." Based upon that agreement, I agreed to execute the April 28, 2006 Joint Status Report, extending defendant's deadline for submitting expert reports to July 14, 2006 (Doc. 36).

9. After the April 28, 2006 Joint Status Report was filed, Mr. Smith, by e-mail dated May 2, 2006 (Exhibit "J" to Plaintiff's Response to Defendant's Motion to Compel), transmitted his "informal discovery request," listing 53 separate requests for production of documents that were much more than the "follow-up

request" which I agreed to produce when I agreed to the extension of the deadline for filing defendant's expert reports.

FURTHER AFFIANT SAYETH NOT.

Mary Elizabeth Hall, Esq.

SWORN TO and Subscribed before me this the 31st day May, 2006.

Notary Public

My Commission expires:

SUE W. ALLBRITTON, RANKIN COUNTY, MS
NOTARY
My Commission Expires
August 15, 2008
PUBLIC

**Lesa Hall**

**From:** Brian.Smith@usdoj.gov
**Sent:** Wednesday, March 15, 2006 2:06 PM
**To:** Lesa Hall
**Subject:** RE: va/ssc depositions (more)

L,

I'd like to accompany my experts to review the docs that you possess in yr office on Thurs/Fri March 23/24. Ideally, this can happen even if you're not in the office, but if you are there so much the better.

Please confirm asap.

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Thursday, January 12, 2006 2:19 PM
To: Smith, Brian (CIV)
Cc: Tom.Ferrell@FerrellEngineering.com; lacox@steelservicecorporation.com; LRayvinson@aol.com
Subject: RE: va/ssc depositions (more)

Here is the schedule:

Ferrell (expert) - 1/24 at 9:00 am
Vinson (expert) - 1/25 at 9:00 am
Cox (President) - 1/26
Ernie Hopkins (a former employee/project manager) - 1/26

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Wednesday, January 11, 2006 4:38 PM
To: lhall@mhdlaw.com (Receipt Notification Requested IPM Return Requested)
Subject: RE: va/ssc depositions (more)

Oops, you appear to have answered my question previously as follows:

"I plan for Ferrell to be Tuesday, Vinson on Wednesday--those may both be full days--you tell me. I also have Ernie Hopkins--ssc's project manager--who is available Thursday and larry cox--ssc's president--who certified the claim. Ray is coming probably Monday or Tuesday. therefore, if tom Ferrell finishes early on Tuesday, we can start with ray. That way maybe we could have larry on Wednesday afternoon as the minor witness and we can start early Thursday with ernie. Let me know. When you arrive, we can talk about the rest of the possible witnesses."

If this is still accurate, can we schedule as follows:

Monday: docs.
Tuesday: Tom F. Start with Ray V.
Wednesday: finish Ray. Larry C.
Thursday: Ernie H.

Please confirm.

-- Brian

-----Original Message-----

EXHIBIT
tabbies
H

From: Smith, Brian (CIV)
Sent: Wednesday, January 11, 2006 12:59 PM
To: 'lhall@mhdlaw.com'
Subject: RE: va/ssc depositions

L,

Can we start getting specific about the depos week after next? I'm arriving on Monday mid day and will look at docs for the rest of the day. Then Tuesday and Wed are the "main" depo days, with Thurs as a "spillover" and/or "minor witness" day if necessary. If you give me names and a quick reminder of who each person is (and you can assign them a day/time if you want) then I can give you an estimated length of depo to help us refine the plan even further.

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Thursday, December 15, 2005 11:59 AM
To: Smith, Brian (CIV)
Subject: RE: va/ssc depositions

Forgot--I also read the new order to replace the old order which required a status report today. Agree the next one is due 2/15

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Thursday, December 15, 2005 10:40 AM
To: Lesa Hall
Subject: RE: va/ssc depositions

Yes, please arrange for ct. rptr.

Depos to take place @ yr office.

I can't do a depo on Friday, so schedule 'em to Thursday at the latest. If you have flexibility, I'd prefer any depo that takes place on Thursday to be the most "minor" witness-- I need to fly out that day.

Also, my calendar has a note for a status report due today. That was from before we moved to extend right? Our next status report is due on 2/15/06, right?

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Tuesday, December 13, 2005 10:36 AM
To: Smith, Brian (CIV)
Subject: va/ssc depositions

Brian-do you need assistance with a court reporter? Hotels? Etc.

## Lesa Hall

**From:** Brian.Smith@usdoj.gov
**Sent:** Wednesday, March 15, 2006 2:17 PM
**To:** Lesa Hall
**Subject:** Caddell v. U.S. document inspection

I assume that's an okay for both days and, if so, great. Lets plan for 10am on the 23rd. It will be David Cotton and Patti Jones, plus perhaps a "staffer" if we decide to bring our own scanner. I will likely arrive later in the morning or in the early afternoon.

You and I can take some time on the 24th to discuss the status of the case, I hope.

Cheers,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Wednesday, March 15, 2006 3:13 PM
To: Smith, Brian (CIV)
Subject: RE: va/ssc depositions (more)

I will not be here on the 23rd but will be here on the 24th. Just let me know what time you will arrive and we will make arrangements.

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Wednesday, March 15, 2006 2:06 PM
To: Lesa Hall
Subject: RE: va/ssc depositions (more)

L,

I'd like to accompany my experts to review the docs that you possess in yr office on Thurs/Fri March 23/24. Ideally, this can happen even if you're not in the office, but if you are there so much the better.

Please confirm asap.

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Thursday, January 12, 2006 2:19 PM
To: Smith, Brian (CIV)
Cc: Tom.Ferrell@FerrellEngineering.com;
lacox@steelservicecorporation.com; LRayvinson@aol.com
Subject: RE: va/ssc depositions (more)

Here is the schedule:

Ferrell (expert) - 1/24 at 9:00 am
Vinson (expert) - 1/25 at 9:00 am
Cox (President) - 1/26
Ernie Hopkins (a former employee/project manager) - 1/26

-----Original Message-----

From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Wednesday, January 11, 2006 4:38 PM
To: lhall@mhdlaw.com (Receipt Notification Requested IPM Return Requested)
Subject: RE: va/ssc depositions (more)

Oops, you appear to have answered my question previously as follows:

"I plan for Ferrell to be Tuesday, Vinson on Wednesday--those may both be full days--you tell me. I also have Ernie Hopkins--ssc's project manager--who is available Thursday and larry cox--ssc's president--who certified the claim. Ray is coming probably Monday or Tuesday.
therefore, if tom Ferrell finishes early on Tuesday, we can start with ray. That way maybe we could have larry on Wednesday afternoon as the minor witness and we can start early Thursday with ernie. Let me know.
When you arrive, we can talk about the rest of the possible witnesses."

If this is still accurate, can we schedule as follows:

Monday: docs.
Tuesday: Tom F. Start with Ray V.
Wednesday: finish Ray. Larry C.
Thursday: Ernie H.

Please confirm.

-- Brian

-----Original Message-----
From: Smith, Brian (CIV)
Sent: Wednesday, January 11, 2006 12:59 PM
To: 'lhall@mhdlaw.com'
Subject: RE: va/ssc depositions

L,

Can we start getting specific about the depos week after next? I'm arriving on Monday mid day and will look at docs for the rest of the day. Then Tuesday and Wed are the "main" depo days, with Thurs as a "spillover" and/or "minor witness" day if necessary. If you give me names and a quick reminder of who each person is (and you can assign them a day/time if you want) then I can give you an estimated length of depo to help us refine the plan even further.

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Thursday, December 15, 2005 11:59 AM
To: Smith, Brian (CIV)
Subject: RE: va/ssc depositions

Forgot--I also read the new order to replace the old order which required a status report today. Agree the next one is due 2/15

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Thursday, December 15, 2005 10:40 AM
To: Lesa Hall
Subject: RE: va/ssc depositions

Yes, please arrange for ct. rptr.

Depos to take place @ yr office.

I can't do a depo on Friday, so schedule 'em to Thursday at the latest.
If you have flexibility, I'd prefer any depo that takes place on Thursday to be the most "minor" witness-- I need to fly out that day.

Also, my calendar has a note for a status report due today. That was from before we moved to extend right? Our next status report is due on 2/15/06, right?

Thanks,

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Tuesday, December 13, 2005 10:36 AM
To: Smith, Brian (CIV)
Subject: va/ssc depositions

Brian-do you need assistance with a court reporter? Hotels? Etc.

**Lesa Hall**

**From:** Brian.Smith@usdoj.gov
**Sent:** Friday, March 31, 2006 3:21 PM
**To:** Lesa Hall
**Subject:** Caddell

L,

I assume you too were contacted by the Court indicating that Judge Futey is not available to try this case until "at least February." Although I don't intend to expand the time for expert discovery/reports beyond mid July as a result of this, I assume this puts to rest the issue of whether that is an acceptable time frame for the experts to finish their work. I will get back to you with a proposed schedule that we can submit to the judge leading up to a February '07 trial.

In order for our experts to complete their work, I will also provide to you a list of follow-up requests for discoverable information that was not contained in the boxes in your offices. As part of that, our financial expert will dialogue directly with DCAA to avoid obtaining identical information that was already provided to them.

Thanks,

-- Brian



EXHIBIT
tabbles
I

**Lesa Hall**

| | |
|---|---|
| **From:** | Brian.Smith@usdoj.gov |
| **Sent:** | Tuesday, May 02, 2006 12:17 PM |
| **To:** | Lesa Hall |
| **Subject:** | RE: Caddell: Informal discovery requestl |
| **Attachments:** | Caddell documents needed--Segregated--Post Jackson Trip incl CDR request R1.doc |

Caddell documents needed--Segr...

Lesa,

In order to further our experts' analysis, we request access to records maintained by the following entities at their places of business: Caddell, SSC, EEE, AMW, WBE. Ideally, our experts can inspect documents (similar to how they reviewed docs in Jackson), during a single, multi-stop, trip. We propose that to take place during the Memorial Day week (i.e. May 30-June 2, or during the week of June 12-16. Assuming no unforeseen problems, we will schedule one day for each visit.

To define the scope of what we seek in more detail, I am attaching an internal working/draft list of specific document/types sought as an "including but not limited to" list. In more general terms, however, the experts need to see all documents that relate to each company's work on this project, their respective sub/contracts, change orders, scheduling materials, and correspondence, as well as non-job specific financial information such as financial statements, previous audits, overhead rate information, etc. Although we will take advantage of the previous work done by DCAA, and hope that will eliminate some of the information sought from each entity (see the checked items on the list), we request access to the original documents maintained by the contractor/s as well.

I understand the issue of your "control" of EEE and WBE, but I'm sure you understand that if any money is being sought on their behalf (or as a result of payments made to them) in this case, then we are entitled to discovery. Of course, we are prepared to be cooperative in this regard.

Also, please verify that the Jackson collection contained ALL working papers used in preparation of the REA/claim/s. If not, please identify the location and nature of any additional docs that were relied upon, or simply send them to me.

Thanks,

-- Brian

EXHIBIT

tabbles'

J

**Lesa Hall**

**From:** Brian.Smith@usdoj.gov
**Sent:** Tuesday, May 02, 2006 1:03 PM
**To:** Lesa Hall
**Subject:** RE: Caddell: Informal discovery requestl

L,

I realize that the requests look voluminous but they really are not. For example, AMW's file on this job cannot possibly be very thick, nor is the non-job-specific financial information. In contrast, the documents in Jackson are quite voluminous and we could not have known what was included/excluded until they were reviewed (something which has to be done by the experts and can't be done by me). In any event, it IS "cleanup" to ask for everything that was not in the SSC docs in Jackson that relates to the project -- in theory everything that relates to the claim should be located in one place (where the claim prep/experts did their work), but this is not the case. Surely coordinating a one-day review of documents at each subcontractor for whom $$$ is sought in this claim is not burdensome and the information is clearly discoverable.

Further, I don't agree that the "discovery deadline has expired" -- we have moved it by consent and expert analysis, by definition, includes the gathering of information.

As an alternative, however, if I can obtain a more narrow set of requests AND you will see that the information is sent to us instead of us visiting, we might be able to avoid the in-person visits, and the logistical issues that entails. Let me know if that is more palatable.

Either way, we do need to obtain additional information from these sources and it is hardly "late" relative to the time our experts inspected documents in Jackson. Obviously, if we engage in a protracted debate over these points, it will affect our ability to complete expert discovery by the times we have proposed to the Court.

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Tuesday, May 02, 2006 1:48 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell: Informal discovery requestl

Brian--I have a problem with this type of request made this late in this case, being 3 months after the discovery deadline has expired, in a case that has been pending for more than 3 years and 3 months after you came to look at ssc's documents -- this is clearly not the kind of "clean-up"
of details that you insinuated. I suggest that you narrow your request to what you really need instead of a laundry list of everything your experts can think of that they might like to see. Otherwise, you will need to explain to the judge why this request is needed and why it is so late in coming.

Also, I assume that what you want from ssc you and/or your experts tagged for copying--I believe that the ssc files produced are all project files and/or other info used to prepare the rea including the originals of ray vinson's files. I will confirm my belief.

Assuming we reach agreement on a much narrower scope, I am not available at the times you indicate because of a trial in new jersey.

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 02, 2006 12:17 PM
To: Lesa Hall
Subject: RE: Caddell: Informal discovery requestl

Lesa,

In order to further our experts' analysis, we request access to records maintained by the following entities at their places of business:
Caddell, SSC, EEE, AMW, WBE. Ideally, our experts can inspect documents (similar to how they reviewed docs in Jackson), during a single, multi-stop, trip. We propose that to take place during the Memorial Day week (i.e. May 30-June 2, or during the week of June 12-16. Assuming no unforeseen problems, we will schedule one day for each visit.

To define the scope of what we seek in more detail, I am attaching an internal working/draft list of specific document/types sought as an "including but not limited to" list. In more general terms, however, the experts need to see all documents that relate to each company's work on this project, their respective sub/contracts, change orders, scheduling materials, and correspondence, as well as non-job specific financial information such as financial statements, previous audits, overhead rate information, etc. Although we will take advantage of the previous work done by DCAA, and hope that will eliminate some of the information sought from each entity (see the checked items on the list), we request access to the original documents maintained by the contractor/s as well.

I understand the issue of your "control" of EEE and WBE, but I'm sure you understand that if any money is being sought on their behalf (or as a result of payments made to them) in this case, then we are entitled to discovery. Of course, we are prepared to be cooperative in this regard.

Also, please verify that the Jackson collection contained ALL working papers used in preparation of the REA/claim/s. If not, please identify the location and nature of any additional docs that were relied upon, or simply send them to me.

Thanks,

-- Brian

**Lesa Hall**

**From:** Brian.Smith@usdoj.gov
**Sent:** Tuesday, May 02, 2006 1:19 PM
**To:** Lesa Hall
**Subject:** RE: Caddell: Informal discovery requestl

I don't agree that my requests/explanations aren't already reasonable, but I'll try to "get reasonable" first -- since I'm obligated to try to work it out with you prior to going to Judge anyway.

Stand by for "more reasonable" request.

-- B

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]
Sent: Tuesday, May 02, 2006 2:15 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell: Informal discovery requestl

Brian--I am not convinced. I suggest you get the list of what you have to have. We can agree to disagree and get the court's ruling or you can get reasonable with your requests--you choose.

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 02, 2006 1:03 PM
To: Lesa Hall
Subject: RE: Caddell: Informal discovery requestl

L,

I realize that the requests look voluminous but they really are not. For example, AMW's file on this job cannot possibly be very thick, nor is the non-job-specific financial information. In contrast, the documents in Jackson are quite voluminous and we could not have known what was included/excluded until they were reviewed (something which has to be done by the experts and can't be done by me). In any event, it IS "cleanup" to ask for everything that was not in the SSC docs in Jackson that relates to the project -- in theory everything that relates to the claim should be located in one place (where the claim prep/experts did their work), but this is not the case. Surely coordinating a one-day review of documents at each subcontractor for whom $$$ is sought in this claim is not burdensome and the information is clearly discoverable.

Further, I don't agree that the "discovery deadline has expired" -- we have moved it by consent and expert analysis, by definition, includes the gathering of information.

As an alternative, however, if I can obtain a more narrow set of requests AND you will see that the information is sent to us instead of us visiting, we might be able to avoid the in-person visits, and the logistical issues that entails. Let me know if that is more palatable.

Either way, we do need to obtain additional information from these sources and it is hardly "late" relative to the time our experts inspected documents in Jackson. Obviously, if we engage in a protracted debate over these points, it will affect our ability to complete expert discovery by the times we have proposed to the Court.

-- Brian

-----Original Message-----
From: lhall@mhdlaw.com [mailto:lhall@mhdlaw.com]

Sent: Tuesday, May 02, 2006 1:48 PM
To: Smith, Brian (CIV)
Subject: RE: Caddell: Informal discovery requestl

Brian--I have a problem with this type of request made this late in this case, being 3 months after the discovery deadline has expired, in a case that has been pending for more than 3 years and 3 months after you came to look at ssc's documents -- this is clearly not the kind of "clean-up"
of details that you insinuated. I suggest that you narrow your request to what you really need instead of a laundry list of everything your experts can think of that they might like to see. Otherwise, you will need to explain to the judge why this request is needed and why it is so late in coming.

Also, I assume that what you want from ssc you and/or your experts tagged for copying--I believe that the ssc files produced are all project files and/or other info used to prepare the rea including the originals of ray vinson's files. I will confirm my belief.

Assuming we reach agreement on a much narrower scope, I am not available at the times you indicate because of a trial in new jersey.

-----Original Message-----
From: Brian.Smith@usdoj.gov [mailto:Brian.Smith@usdoj.gov]
Sent: Tuesday, May 02, 2006 12:17 PM
To: Lesa Hall
Subject: RE: Caddell: Informal discovery requestl

Lesa,

In order to further our experts' analysis, we request access to records maintained by the following entities at their places of business:
Caddell, SSC, EEE, AMW, WBE. Ideally, our experts can inspect documents (similar to how they reviewed docs in Jackson), during a single, multi-stop, trip. We propose that to take place during the Memorial Day week (i.e. May 30-June 2, or during the week of June 12-16. Assuming no unforeseen problems, we will schedule one day for each visit.

To define the scope of what we seek in more detail, I am attaching an internal working/draft list of specific document/types sought as an "including but not limited to" list. In more general terms, however, the experts need to see all documents that relate to each company's work on this project, their respective sub/contracts, change orders, scheduling materials, and correspondence, as well as non-job specific financial information such as financial statements, previous audits, overhead rate information, etc. Although we will take advantage of the previous work done by DCAA, and hope that will eliminate some of the information sought from each entity (see the checked items on the list), we request access to the original documents maintained by the contractor/s as well.

I understand the issue of your "control" of EEE and WBE, but I'm sure you understand that if any money is being sought on their behalf (or as a result of payments made to them) in this case, then we are entitled to discovery. Of course, we are prepared to be cooperative in this regard.

Also, please verify that the Jackson collection contained ALL working papers used in preparation of the REA/claim/s. If not, please identify the location and nature of any additional docs that were relied upon, or simply send them to me.

Thanks,

-- Brian

ATTORNEY WORK PRODUCT
CONFIDENTIAL & PRIVILEGED

**√ Caddell—Documents Needed That Were In the 20 Boxes in Jackson**

**√ Caddell—Documents that Might/Should Be in DCAA WPs**

√ Copy of the contract/subcontract between Caddell and SSC; plus all modifications and related correspondence

Copy of the contract/subcontract/purchase order between SSC and EEE Detailing; plus all modifications and related correspondence (Jackson docs had binders with a portion of the info requested in this item but the binders do not appear to complete with mods, etc.)

Copy of the contract/subcontract between SSC and Williams-Beasely Erectors; plus all modifications and related correspondence (Jackson docs had binders with a portion of the info requested in this item but the binders do not appear to complete with mods, etc.)

Copy of the contract/subcontract between SSC and American Metal Works; plus all modifications and related correspondence (Jackson docs had binders with a portion of the info requested in this item but the binders do not appear to complete with mods, etc.)

√ Copies of all invoices from EEE Detailing to Caddell/SSC under the contract/subcontract

√ Copies of all disbursement transactions from Caddell/SSC to EEE Detailing under the contract/subcontract

Copies of all correspondence related to EEE Detailing invoices under the contract/subcontract

√ Copies of all cost data and time logs maintained by EEE Detailing related to extra handling of RFIs under the contract/subcontract

√ Copies of all EEE Detailing time sheets for the period April 1996 through September 1997.

√ Copies of travel expense vouchers and supporting documentation for the additional engineering travel costs ($25,703).

√ Copies of time distribution and payroll records supporting the additional engineering project management costs ($89,654.25).

√ Copies of invoices and canceled checks for additional engineering printing costs ($6,412).

ATTORNEY WORK PRODUCT
CONFIDENTIAL & PRIVILEGED

√ Copies of all SSC time distribution reports and payroll data for the period from January 1996 through December 1997.

Copies of all SSC production reports for the period from January 1996 through December 1997.

√ Supporting documentation for the unpaid principal salaries of $50,000 included in EEE Detailing overhead costs and $100,000 included in the inefficiency damages calculations.

√ Copies of all supporting documentation for the Williams-Beasely Erectors claimed costs of $208,322.73.

√ Copies of supporting documentation for the $83,755 of lost overhead being claimed by American Metal Works.

√ Copies of supporting documentation for the 2,000 hours of unabsorbed overhead being claimed by American Metal Works.

√ Copies of supporting documentation for the assertion that American Metal Works wage rates increased by $1.00 per hours in 1997.

√ Copies of supporting documentation for the assertions that American Metal Works overhead rates were 200% in 1996 and 230% in 1997.

√ Copies of supporting documentation for the assertions that SSC bid overhead at a rate of 200% for the VA project and started bidding overhead at a rate of 235% for projects in late 1996.

Copies of all notes, memoranda, and calculations supporting SSC's bid on the VA project.

√ Copies of all supporting documentation for the claimed SSC cost of subletting, including evidence of sales taxes paid to the State of Tennessee.

√ Copies of all supporting documentation for the SSC tonnage-to-date amounts, man-hours per ton calculations, and other elements of the SSC efficiency loss calculations.

√ Copies of supporting documentation for SSC's other projects budgeted and actual man-hours and inefficiency man-hours used in the SSC efficiency losses on other projects calculations.

√ Copies of all supporting documentation for the costs shown in the preparation costs claim ($153,884.12).

**Caddell—Documents Needed That Were Not In the 20 Boxes in Jackson**

Copies of all workpapers prepared by and other information relied upon by Construction Mediation Services in preparing the REA.—There were a lot of CMS files in Jackson; but it is not clear that we have all of CMS's workpapers.

Caddell financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998.

SSC financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998.

Williams-Beasely Erectors financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998.

American Metal Works financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1995, 1996, 1997, and 1998.

EEE Detailing financial statements, accompanying schedules, and supplementary information, with audit, review, or compilation reports, internal control reports, and management letters as of and for the years ended December 31, 1994, 1995, 1996, 1997, and 1998.

Copies of all audits of any Caddell activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present.

Copies of all audits of any SSC activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present.

Copies of all audits of any Williams-Beasely Erectors activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present.

Copies of all audits of any American Metal Works activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present.

Copies of all audits of any EEE Detailing activities (contracts, subcontracts, grants, indirect costs, proposals, and so forth) performed by any auditors—internal or external, private or governmental—from January 1996 to present.

**CDR Consultants Document Request**

Copy of the certified claim transmitted to Caddell on February 3, 1998 (the scanned pdf version of the REA is dated October 31, 1997 and has handwritten notes/markings on it, but it appears from project correspondence that a claim was submitted on 2/3/98).

Copy of contract amendment #2 (missing from the scanned docs provided in pdf format – we received 1, 3, and 4), and copies of any other contract amendments.

Copies of supporting documentation for Change Order #2 between Caddell and SSC

Copies of approved REAs for any project time extensions between the VA and Caddell

Copies of any REAs submitted by Caddell to the VA for subcontractors other than SSC

Copy of Meeting Minute #89 (missing from the scanned docs provided in pdf format)

Copies of notices of defective and/or rejected work for SSC and its subcontractors

Copies of contract non-compliance notices for SSC and its subcontractors

Copies of the most recent shop drawing/submittal log (all logs are NOT necessary because this document should have been continually updated reflecting submittals from the start of the project through project completion).

Copy of Caddell's RFI log reconciling the RFI numbers used by SSC vs. those used by Caddell for the VA

Copies (preferably electronic) of all CPM schedules for the duration of the project including the baseline schedule and subsequent schedule updates. (Note: the schedules that were provided in pdf form are partial schedules showing only the structural steel and NOT the complete project. Also, the Jackson files contained fragmented schedules in MS Project format, Primavera format, and the VA CPM Automated Control System format so there should be electronic files – maybe at Caddell)

Copies of monthly CPM schedule narratives from Caddell to the VA

Copies of any monthly progress reports prepared by Caddell for the VA

Copies of all certified payroll for SSC and its subcontractors

Electronic copies of the schedule of values/progress payments for the duration of the project.

Copies of SSC's plant production schedules (planned/baseline and updates) for the VA project and all other projects in-shop for the entire delay period claimed by SSC.